(No. 20746.—)

JOHN G. REDMOND, Appellant, *vs.* BERTHA GILLIS, Exrx., *et al.* Appellees.

*Opinion filed October 23, 1931—Rehearing denied Dec. 4, 1931.*

JONES, J., took no part.

SUMNER & REARDON, for appellant.

CHAPMAN & DuHADWAY, and ACTON, ACTON & BALDWIN, (F. A. DuHADWAY, and WILLIAM M. ACTON, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The appellant, John G. Redmond, brought this suit to quiet title to 716 acres of land in Jersey county, or, in the alternative, for a decree creating a lien on the interest of Bertha Gillis and Walter A. Abdill, appellees, in the land, and in default of payment for an order of partition and sale. The amended bill alleges that in 1906 George B. Leonard, who then owned the land in fee simple, conveyed an undivided two-thirds interest therein to George W. Abdill and Redmond, whereby Leonard, Abdill and Redmond each became seized of an undivided one-third interest in the land; that afterwards Leonard conveyed his undivided one-third interest in the land to Redmond; that on September 2, 1910, Redmond conveyed to Abdill an undivided one-half interest in the undivided one-third interest which he had acquired from Leonard, so that Redmond and Abdill then owned the land in equal parts as tenants in common. It is further alleged that Redmond and Abdill were partners dealing in coal rights both prior and subsequent to September 2, 1910; that while such partnership relation existed Abdill and wife executed a warranty deed dated August 10, 1909, conveying to Redmond all of Abdill's interest in the land, the consideration named in the deed being 250 notes, of $20 each, in hand paid, but the bill asserts that Redmond did not owe these 250 notes and was unwilling to then accept the deed because he claimed that Ab-

dill was indebted to him in the amount of $8500 for moneys due the First National Bank of Danville and profits unaccounted for on farm and coal lands. In support of these allegations two agreements signed by Abdill are set forth in the bill, one dated July 16, 1917, and the other dated September 5, 1917. The first agreement recites that Abdill will convey all his interest in the 716 acres to Redmond in fee simple by warranty deed and dissolve the partnership relation provided Redmond will pay off a $1500 debt to the First National Bank of Danville and pay $7000 in cash as profits on the farm and coal lands, these payments to be in lieu of the 250 notes named as consideration in the deed dated August 10, 1909. The second agreement is as follows:

"I, George W. Abdill, having made J. G. Redmond a deed to Jersey county land, all I own in sections 20, 21, 28 and 29, situated in Rosedale township, for and in consideration of 250 notes given for $20 each on an average, and other good and sufficient considerations other are, the 716-acre farm is a burden annually of more than $1000. John has refused to accept deed made in 1909 because of the burden, and contends that we should in equal partners until such time as prospects seem better. Therefore I hereby agree that on and after deed is recorded by John and accepted, I will bear and assume one-half (½) of the expense for a term of ten (10) years, hereby binding my heirs and assigns for ten years from date.                    GEORGE W. ABDILL. (Seal)

"Witness: G. G. Leonard, notary public, this September 5, 1917."

George W. Abdill died testate October 20, 1917. The deed of August 10, 1909, was not recorded until November 2, 1925. It is undisputed that at the time of Abdill's death the record title was vested one-half in him and one-half in Redmond, as tenants in common.

The will of George W. Abdill was probated and admitted to record in Vermilion county November 23, 1917, devising all his property, real and personal, to his widow, Julia A. Abdill. Sixteen months later, February 1, 1919, a codicil to the will was found, which after some litiga-

tion (*Abdill* v. *Abdill,* 295 Ill. 40,) was admitted to record with the will. This codicil gave seven-tenths of the estate to the widow, Julia, two-tenths to Lewis A. Abdill, one-twentieth to Walter A. Abdill and one-twentieth to Bertha E. Abdill, now Gillis. On April 16, 1918, before the codicil was discovered and while it was believed that Julia was the sole devisee, she conveyed her undivided one-half interest in the land to Walter, and he entered into possession as a co-tenant with Redmond. Both of them did work on the farm, rented it out and divided the rents equally between them. Each of them paid one-half the taxes and expenses and maintained a joint bank account by the style of Abdill & Redmond, on which each of them drew checks to pay farm accounts, ranging from December 18, 1918, to November 3, 1920. On November 5, 1918, Redmond and his wife and Walter and his wife mortgaged the land to the Federal Land Bank of St. Louis to secure a note for $6000 executed by all four mortgagors. This note and mortgage remain unpaid and unsatisfied of record. On May 25, 1918, while the record title to an undivided one-half interest to the land was still held by Julia, the codicil not then having been discovered, Redmond executed and delivered to her a general warranty deed correcting an error in the description of a former deed dated February 2, 1910, to George, her deceased husband. The correction deed recites: "This deed, with other conveyances heretofore made, gives to John G. Redmond and Julia A. Abdill, sole devisee under the last will and testament of George W. Abdill, deceased, each an undivided one-half interest in the above described premises." On November 23, 1918, Redmond filed a claim against the George W. Abdill estate for $2850, which included, among other items, $1517.50 for two notes to the First National Bank of Danville which Redmond claimed to have paid for the deceased and is also a part of the money alleged to be due in the amended bill here. This claim was disallowed and Red-

mond's appeal to the circuit court was subsequently dismissed for want of prosecution.

Julia A. Abdill died November 22, 1920, leaving a will, which was admitted to record, by which she gave all of her property to Walter A. Abdill. As a result of agreements made between the different parties interested in the estate of George W. Abdill, Walter and Bertha Gillis conveyed their entire interest in the 716 acres of land to Lewis A. Abdill on July 14, 1921, and from that date Redmond and Lewis conducted the farm as co-tenants in the same manner as Redmond and Walter had done before that time, each contributing one-half of the expenses of operation, mortgage payments and taxes. Redmond at that time also stipulated in writing that all disputed claims, of every kind and character, between himself and the estate of George W. Abdill had been settled and adjusted. Lewis died January 2, 1928, leaving a will, by which he gave his undivided one-half interest in the land to his daughter, Bertha Gillis, and his son, Walter, in equal parts. Bertha was named and appointed executrix and in that capacity was made a party defendant in this suit. Prior to the death of Lewis, Redmond received a $3000 check from the Sanitary District of Chicago for damages to the Jersey county farm. This check was made payable to Redmond and Lewis. It was endorsed by both parties, and after the death of Lewis his executrix sued for, and later, by way of compromise, recovered one-half the amount from Redmond.

To the amended bill Bertha Gillis, as executrix of the will of Lewis A. Abdill, deceased, filed a sworn plea to the jurisdiction, setting up that complainant and defendant were residents of Vermilion county and not Jersey county; that she was served in Vermilion county and not in Jersey county, and that she, as executrix, did not have or claim any interest in the real estate. Answers were also filed by Walter A. Abdill and Bertha, asserting their ownership as tenants in common to an undivided one-half interest in the land,

pleading lack of consideration and illegal consideration for the deed and contracts under which Redmond claimed to own the land, and alleging that Redmond was estopped by his own deed to Julia A. Abdill dated July 25, 1918, by the mortgage given by him and Walter November 5, 1918, to the Federal Land Bank of St. Louis, by judgment against him on his claim against the George W. Abdill estate in the probate court of Vermilion county, and by his acts and statements contrary to his present claim of ownership. Walter and Bertha also filed a cross-bill for partition and relief. The cause was referred to the master in chancery, and upon his report of the evidence the chancellor sustained the plea of the executrix as to jurisdiction over her, dismissed complainant's amended bill for want of equity and granted the prayer for relief under the cross-bill. From this decree the present appeal was taken.

It is not disputed that at the time of George W. Abdill's death the record title to the 716 acres of land in Jersey county was vested one-half in him and one-half in Redmond. At that time the deed of August 10, 1909, had not been recorded. Redmond bases his claim to relief upon the deed of August 10, 1909, the two agreements of July 16, 1917, and September 5, 1917, and the subsequent contracts—particularly the one dated ·August 5, 1922, with Lewis Abdill—to confirm his title. The original deed of August 10, 1909, and the two contracts of 1917, were not produced, and Redmond was permitted to testify, over objection, that they were burned in his presence by Lewis. Without considering this objection or the conflicting evidence relating to genuineness of signatures, it is apparent that unless the deed of George W. Abdill to Redmond dated August 10, 1909, and the agreements of 1917, operated as a complete legal transfer to Redmond of all the interest of George in the land, then Redmond is not entitled to any relief by reason of subsequent events. It is true that the deed of August 10, 1909, was a warranty deed and might have

passed after-acquired title were it not for the fact that on February 10, 1910, Redmond executed and delivered to George a warranty deed reciting specifically that "this deed, with other conveyances heretofore made, gives to John G. Redmond and George W. Abdill each an undivided one-half interest in the above described premises." Redmond's testimony is that he did not accept the deed of August 10, 1909, at that time—that he did not accept it until "after he made those last two agreements." The consideration recited in this deed is 250 notes of $20 each. It is not contended by Redmond that these notes were ever executed or paid. The subsequent agreements would indicate that these notes were never delivered or paid, for in the agreement of July 16, 1917, George agrees to sell his interest in the land to Redmond for $8500, part of which was in lieu of the 250 notes of $20 each mentioned in the deed of August 10, 1909. This was a unilateral agreement and did not become a binding contract between the parties as it was not signed by Redmond, and Redmond testified his understanding of the transaction to be that George would either pay him what he owed or Redmond could take the deed to the land in place of it. The second contract introduced in evidence by Redmond, signed only by George on September 5, 1917, showed conclusively that up to that time Redmond had not accepted the deed, for it says: "John has refused to accept deed made in 1909 because of the burden, and contends that we should in equal partners until such time as prospects seem better. Therefore I hereby agree that on and after deed is recorded by John and accepted, I will bear and assume one-half of the expense for a term of ten years." This contract not only showed that the deed had not been accepted up to that time but that its acceptance by Redmond was then postponed until some indefinite future time, when "prospects seem better." This contract left the payment of the consideration and the recording and acceptance of the deed by Redmond in abeyance. The rec-

ord fails to show that the 250 notes were ever executed, delivered or paid. George died soon after this contract was made by him, and the deed was not recorded until eight years later, November 2, 1925. Up to the time of George's death the record shows conclusively that Redmond had never accepted the deed. In the years that followed George's death it is apparent from Redmond's actions that he did not claim title to George's half of the farm. On May 25, 1918, he gave Julia A. Abdill, widow of George, a warranty deed to correct a description in the deed dated February 10, 1910, containing the recital, "this deed with other conveyances heretofore made gives to John G. Redmond and Julia A. Abdill * * * each an undivided one-half interest in the above described premises." Subsequently Julia deeded her interest to Walter, and the latter and Redmond entered into joint possession of the farm, each taking one-half the profits and paying one-half the expenses of operation. In further confirmation of their tenancy in common, Walter and Redmond, joined by their wives, borrowed $6000 from the Federal Land Bank of St. Louis on November 5, 1918, for the purpose of getting money to make improvements and build a levee, and this mortgage still remains unpaid. The evidence further shows that after Walter had sold his interest to Lewis, the latter and Redmond continued to operate the farm as tenants in common until Lewis' death, each contributing his one-half of taxes, expenses and interest.

From all of these circumstances it is apparent that Redmond did not claim title to more than one-half of the land, and that the deed of August 10, 1909, was never delivered and accepted or any consideration paid for it. The invariable rule in all cases is, that there must be a delivery of the deed by the grantor and an acceptance by the grantee to constitute a valid conveyance. The contract of September 5, 1917, shows that up to within a few weeks of the death of George W. Abdill, the grantor, the deed had not

been accepted by Redmond nor the consideration paid. The proof fails to show that Redmond exercised his discretion by accepting and recording the deed during the lifetime of the grantor. The death of the grantor revoked Redmond's authority and made its recording thereafter of no legal effect. (*Benneson* v. *Aiken,* 102 Ill. 284; *Sellers* v. *Rike,* 292 id. 468.) When it was shown by the agreement of September 5, 1917, that the deed in question had not been accepted and that it was the intention of the parties for the deed not to operate as a present conveyance but that something else had to be done before it should take effect, the title did not pass until the conditions were fulfilled and the acceptance made. (*Mitchell* v. *Clem,* 295 Ill. 150.) That no acceptance was made by Redmond is evidenced by continued acts of co-tenancy, payment of taxes and interest and division of profits between Redmond and both Walter and Lewis over a period of years. By these various acts Redmond is now estopped from asserting any claim either for the money or to any interest in the Abdill half of the land. (*Thor* v. *Oleson,* 125 Ill. 365; *Vail* v. *Northwestern Mutual Life Ins. Co.* 192 id. 567.) And in his deed to Julia A. Abdill, the recitations of Redmond as to the quantity of his particular estate estopped him from afterwards denying it. *Thornton* v. *Louch,* 297 Ill. 204.

It is further urged by Redmond that since he was in possession of the deed of August 10, 1909, and claimed some rights in the land, a presumption arises that the deed was delivered to and accepted by him. A number of cases are cited in support of this position but are not applicable to the circumstances of this case. This court has repeatedly held that presumptions have no force when confronted with evidence, even of the slightest character. In this case Redmond himself introduced the two contracts of 1917. These were not parol agreements but were in writing, and, considering them with the subsequent acts of Redmond above related, are more than sufficient to destroy any presumption

of delivery of the 1909 deed. Placing a deed in the hands of a grantee does not constitute delivery where it is shown the intention of the parties was that it was not to become operative immediately and where such intention is evidenced by continued acts of ownership and operation. If conditions are attached to the delivery of a deed the burden is upon the grantee to show performance of such conditions. (*Kavanaugh* v. *Kavanaugh*, 260 Ill. 179.) This Redmond has failed to do.

It is further argued by Redmond, that irrespective of the 1909 deed he is entitled to relief by virtue of the contract dated August 5, 1922, between himself and Lewis A. Abdill. Under this contract Lewis agreed to pay Redmond $8517.50 for a quit-claim deed to the undivided one-half interest in the Jersey county land formerly owned by George W. Abdill. It is claimed by Redmond that this contract is a summation of all the preceding transactions, and that it created the relation of vendor and vendee and furnished the most important basis for the relief prayed for in the bill. This contract is only an agreement by which Redmond undertook at some future time to quit-claim a one-half interest in the land to Lewis. It did not confer any title upon Redmond nor confirm any title in him which he did not then possess. The consideration is stated to be in lieu of an agreement made between the same parties in December, 1918, by which Redmond agreed to suppress his claim against the estate of George W. Abdill, let Lewis Abdill file a claim for a larger amount and give Redmond twenty-five per cent of whatever amount was recovered. Agreements of this character are illegal and void as contrary to public policy and will not be enforced. (*Goodrich* v. *Tenney*, 144 Ill. 422; *International Coal Co.* v. *Industrial Com.* 293 id. 524.) Since the original contract of December, 1918, between the parties was illegal and the contract of August 5, 1922, was made in lieu of the former illegal agreement, the latter is likewise unenforcible. When any part

of the entire consideration of a contract is illegal the whole contract is void. *Lyons* v. *Schanbacher,* 316 Ill. 569.

For the reasons above stated the decree of the circuit court of Jersey county is affirmed.     *Decree affirmed.*

Mr. JUSTICE JONES took no part in this decision.