(No. 32203.— ▬▬▬▬▬)

EDNA DOERING KOLZE *et al.,* Appellees, *vs.* CLARA L. FORDTRAN *et al.,* Appellants.

*Opinion filed May 22, 1952—Rehearing denied September 15, 1952.*

KLENK & KLEIN, of Chicago, (FRANKLIN W. KLEIN, and JOHN D. O'CONNOR, of counsel,) for appellants.

BRUCE PARKHILL, of Chicago, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal to reverse a decree of the superior court of Cook County declaring null and void a trust agreement dated November 8, 1946. A freehold being involved, the appeal comes here directly.

Herman C. Doering was the husband of Clara E. Doering, deceased, and is the father of Edna Doering Kolze. Edna Doering Kolze was the stepdaughter of Clara E. Doering. Clara L. Fordtran, Helen Fordtran, Arthur E. Fordtran, and Henry C. Fordtran were nieces and nephews of Clara E. Doering, being the children of her sister, Emma.

The original complaint was filed by Herman C. Doering, and Edna Doering Kolze, administratrix of the estate of

Clara E. Doering, against these appellant Fordtrans. The complaint alleged the execution of the deeds and trust agreement in question, that Clara E. Doering was at that time on her deathbed, in a semiconscious condition and unable to comprehend the nature and legal effect of the documents she signed, and that Herman Doering had been feeble and in impaired health for a long time and was unable to comprehend or understand the legal effect of his signing of these documents. Count II alleged that the trust agreement was an attempt to create a testamentary trust by an instrument other than a properly executed will, and that the trust agreement was therefore invalid. The cause was referred to a master who took proof. The plaintiffs then asked leave to file an amendment to their complaint setting forth that a fiduciary relationship existed between Clara L. Fordtran and Arthur Fordtran on the one hand and Clara E. Doering and Herman C. Doering on the other hand. The court ordered the master to consider whether there was evidence in the record in support of the amendment. The master reported in favor of the appellants, finding that the plaintiffs failed to prove any fiduciary relationship, undue influence, or lack of mental capacity on the part of Clara E. Doering or Herman C. Doering to execute the trust agreement and related deeds, and that the trust was valid as to the Illinois and Mississippi property, but invalid as to the Florida property, since the Florida statute requires that deeds be attested by two subscribing witnesses. Appellees' objections to the master's report were overruled. Their objections were permitted to stand as exceptions to the report except that portion relating to the Florida property. The superior court sustained the exceptions to the master's report, and entered the decree which is the subject of attack in this court.

It is undisputed that in 1917 Clara E. Doering was married to Herman C. Doering, she then being forty-four years of age and a spinster. They lived together as hus-

band and wife until her death on November 19, 1946. No children were born of this marriage. Edna Doering Kolze, Herman Doering's daughter by a prior marriage, was married prior to her father's marriage to Clara E. Doering, and never resided with them.

At the time of her marriage, Clara E. Doering owned property, known as the Blue Island property, improved with a two-story house, a garage, and a frame cottage. In 1917 she acquired by inheritance from her father, Herman Schmitt, certain property located at 10705 South Prospect Avenue, Chicago, Illinois, known as the Morgan Park property. This property was improved with a two-apartment building and two cottages. Herman and Clara resided in one of these apartments. Both the Blue Island and Morgan Park properties were placed in joint tenancy with Herman and Clara as joint owners some years after the marriage, and remained that way until the establishment of the trust in question.

In 1924, 1925, and 1926, Herman and Clara Doering acquired property in Florida in both their names, and in Mississippi in 1926. All correspondence in regard to the purchase of the Mississippi property was with Clara Doering and she signed notes for the purchase price in the sum of $1750.

For some time Helen and Clara Fordtran had collected the rents on the Blue Island property and brought them to Clara Doering once a month. They received one dollar a month for this service. This was merely a matter of convenience, since Helen and Clara Fordtran lived next door to the Blue Island property, whereas the Doerings resided in Morgan Park, a considerable distance from the property. The Doerings did not wish to make the trip at their age. All matters relating to repair and the leasing of the Blue Island property were handled by the Doerings. Helen and Arthur Fordtran had, in addition, assisted the Doerings in the preparation of their income-tax returns.

Clara Doering had been in failing health for some time and on August 28, 1946, went to St. George's Hospital for a blood transfusion. Helen Fordtran was the blood donor, and Clara Fordtran brought Clara Doering home from the hospital. Clara Doering became confined to her bed in October. Clara Fordtran, a nurse's aide during the war, assisted Herman Doering in caring for his wife during her last illness, being in attendance every day after November 1, 1946, until Clara Doering died. Only Herman Doering testified that his wife was given hypodermics, and that he saw one administered to her at noon of the day the trust documents were executed. Neither of the attending physicians testified in the proceeding, because they were both deceased. Three doctors did testify, however, and gave their opinions as to the mental state of Clara Doering at 5:30 P.M. on November 8, 1946, the date of the execution of the trust agreement, if she was given morphine at noon. One doctor stated that she would not be lucid at 5:30 while the other two gave their opinion that she would be lucid and capable of transacting business. It was never determined that a hypodermic was administered and the medical experts raised further doubt by stating it is very unusual to give a hypodermic at noon if only one is given per day. They also reasoned that the shot may have been a liver extract, considering the fact that Mrs. Doering suffered from anemia. All of which leaves the facts of a hypodermic injection very doubtful and of little probative value in this proceeding. Mrs. Doering died on November 19, 1946, of carcinoma of the colon and chronic nephritis.

On January 19, 1935, Herman and Clara Doering each executed a will giving all property to the other. These wills were kept by Herman Doering and Edna Kolze in their safety-deposit box. Clara Doering's will was admitted to probate May 12, 1949.

On November 8, 1946, Clara E. Doering, Herman C. Doering and Clara L. Fordtran executed the trust agree-

ment and the supporting deeds covering the real estate owned by the Doerings. These three persons were to be trustees and were to manage the property, paying the entire net income to Clara E. Doering during her lifetime, and after her death to Herman C. Doering during his lifetime. Clara and Herman were to occupy the premises then occupied by them, rent free during their lifetime. The trustees could sell, borrow money, etc., in order to provide sufficient income for the proper support and comfort of the Doerings. Upon the death of both, the property was to be held for the benefit of Arthur, Clara, Helen, and Henry Fordtran, Virginia Gibbons, another niece of Clara Doering, and Edna Kolze, share and share alike. Clara and Herman Doering executed deeds conveying the property to one Catherine Dowd, as nominee, to effectuate the transfer to the trustees.

The trust documents were executed on November 8, 1946, at about 5:30 P.M. Clara Fordtran had been at the Doering home all day; Arthur Fordtran arrived late in the afternoon. He was soon followed by John Dowd, an attorney Arthur had engaged to draw up the documents. The documents were first executed by Clara Doering in her bedroom, and then by Herman Doering and Clara Fordtran at the dining-room table.

Herman Doering contends that prior to November 8, 1946, he had never discussed a trust with his wife or the Fordtrans; that after Arthur, Clara, and Dowd had been with his wife in the bedroom, they came to him in the dining room, and Arthur informed him his wife was not going to live and that he should sign the papers. He said this was the first he knew his wife would not live, and he was shocked and nervous, and so signed without the papers being read by or to him..

Arthur and Clara Fordtran maintain that in October of 1943 the Doerings discussed the trust with them, and requested Arthur to procure a lawyer to draft the neces-

sary papers according to their stipulated terms. Arthur Fordtran soon contacted Edward Dowd to draft a tentative trust agreement, but because of the war Arthur was unable to see the Doerings often for the next three years. On November 4, 1946, it is admitted that Clara Fordtran secured the deeds and legal descriptions to the properties from the Doerings, Herman having taken them from the safe and given them to her. Arthur then called Edward Dowd to complete the papers, but finding he would be out of town for a week secured John Dowd, a brother of Edward, to complete the papers. Arthur says he then spent the evening of November 7, 1946, with his aunt and uncle going over these papers and noting changes they wished made. He returned the documents to John Dowd who redrafted them and brought them to the Doering home the next evening. He testified that he, Clara Fordtran, and Dowd entered his aunt's bedroom, where the papers were read to her, Dowd questioned her, and she then signed the papers. Dowd then questioned Herman Doering to be sure he understood the nature of his act, the papers were read to him, and he then signed them.

The superior court found that the persons whose signatures appear on certain of the instruments as witnesses were not present at the signing thereof; that Arthur and Clara Fordtran occupied a fiduciary position with relation to Herman and Clara Doering and each took advantage of and violated that fiduciary relation in obtaining the Doerings' signatures and in defrauding them of their real estate; that both of the Doerings were aged and infirm in body and mind; that Arthur and Clara Fordtran and their attorney failed to make a free and frank disclosure of all relevant information; that there was no consideration for the deeds; that the Doerings had no competent and independent advice in regard to the transaction, and that the trust agreement and deeds are each of them fraudulent and should be declared for naught and set aside. The

court decreed the instruments to be null and void, directed Clara and Helen Fordtran, as trustees, to execute quitclaim deeds to the described real estate to Herman C. Doering, his heirs, executors, administrators, and assigns, and ordered the trustees to account to Herman C. Doering for all income from the properties since November 8, 1946. Arthur Fordtran and Clara Fordtran were taxed with all the costs of the proceeding.

An important question presented here is whether a fiduciary relation existed between Arthur Fordtran and Clara L. Fordtran on one hand and Herman C. Doering and Clara E. Doering on the other. A fiduciary relationship exists where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. It exists where confidence is reposed on one side and resulting superiority and influence is found on the other. (*Johnson* v. *Lane*, 369 Ill. 135; *Neagle* v. *McMullen*, 334 Ill. 168; *Stone* v. *Stone*, 407 Ill. 66.) The relationship may exist as a matter of law between attorney and client, guardian and ward, principal and agent, and the like, or it may be moral, social, domestic, or even personal. Where the relationship does not exist as a matter of law or is sought to be established by parol evidence, the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion. (*Stone* v. *Stone*, 407 Ill. 66; *Clark* v. *Clark*, 398 Ill. 592; *Stewart* v. *Sunagel*, 394 Ill. 209.) The burden of proving facts from which a fiduciary relationship would arise is on the one who attempts to set aside a conveyance. (*McGlaughlin* v. *Pickerel*, 381 Ill. 574.) The burden thus fell upon the appellees in this cause.

The long-standing rule of this court that when a chancellor has heard the testimony in open court and so sees and hears the witnesses, this court will not reverse his findings of fact unless they are palpably against the weight

of the evidence, even though we might be inclined to find otherwise, does not apply in this case. Here, the chancellor heard none of the evidence and saw no witnesses. All testimony was taken before the master. Hence, the findings of fact by the chancellor below need not be accorded the weight that would be their due had the chancellor heard the testimony. It was the master's province in the first instance to determine the issues and while his finding of facts does not carry the same weight as the verdict of a jury, or the findings of a chancellor where the evidence has been taken by the court, yet his findings are entitled to due weight on review of the cause. *McGlaughlin* v. *Pickerel,* 381 Ill. 574.

From the evidence here it appears that the Fordtrans were not particularly close to the Doerings, and their visits were infrequent, except that Helen and Clara Fordtran did bring the rent from the Blue Island property about once every month. While Clara Fordtran did assist in the care of Mrs. Doering while she was ill, such is not enough to establish a fiduciary relation. (*McGlaughlin* v. *Pickerel,* 381 Ill. 574.) There is no evidence that the Fordtrans gained any superiority or dominion over the Doerings. There is likewise no indication that either of the Doerings was lacking in ordinary business knowledge or had ever depended on any of the Fordtrans to conduct any important business affairs. None of the neighbors and friends of the Doerings, presented as witnesses by the plaintiffs, were requested to give—nor did they volunteer—an opinion as to the mental capacity of either Clara or Herman Doering. The test of mental capacity to make a conveyance is that one must have sufficient mind and memory to comprehend the nature and effect of the act in which he is engaged. Impairment of mind incident to old age and disease or eccentricities will not render the conveyance invalid so long as the grantor is able to comprehend the nature of the transaction and protect his own interests. (*McGlaughlin* v.

*Pickerel,* 381 Ill. 574; *Wharton* v. *Meyers,* 371 Ill. 546; *Johnson* v. *Lane,* 369 Ill. 135; *Sargent* v. *Roberts,* 265 Ill. 210.) No greater mental capacity is required to make a deed of voluntary settlement reserving a life estate than is required to make a will. (*Johnson* v. *Lane,* 369 Ill. 135; *McGlaughlin* v. *Pickerel,* 381 Ill. 574.) Considering all the evidence as heard by the master, we are unable to say that the evidence is so clear, convincing, and unmistakable as to lead to but one conclusion, a finding of fiduciary relationship. Consequently, we are unable to concur in the trial court's finding of a fiduciary relationship between these parties.

It is incumbent on this court to determine if there existed in this case such undue influence as would render the conveyances inoperative. What constitutes undue influence depends upon the circumstances of each case. Undue influence is a species of constructive fraud which the courts will not undertake to define by definite words or rules. Influence, to render a conveyance inoperative, must be of such a nature as to deprive the grantor of his free agency. An undue influence means a wrongful influence, such an influence as makes the grantor or testator in the instrument executed speak the will of another and not his own. (*Sargent* v. *Roberts,* 265 Ill. 210.) To establish undue influence one charging it must show more than a mere suspicion. The evidence of such undue influence must be clear and cogent, leaving the mind satisfied with the truth of the charge. (*Johnson* v. *Lane,* 369 Ill. 135.) The evidence here casts only a weak suspicion of undue influence. No clear, positive evidence of the charge is presented, but only such circumstances as would raise a mere possibility of it. The insufficiency of such evidence leaves no alternative but to find that such undue influence did not exist.

The appellees admit in their briefs and argument before this court that they raise no serious contention that this trust agreement was an attempt to make a testamentary

disposition by an instrument other than a properly executed will. Where by deeds and a trust agreement grantors set up a trust, reserving to themselves a life estate in the income of the trust and after their deaths the trust property is to go to certain named beneficiaries, it is not of a testamentary character where the deeds contain all the requisites to constitute a valid conveyance of real estate under the statute and are duly executed, acknowledged and delivered. (*Bear* v. *Millikin Trust Co.* 336 Ill. 366.) The deeds here were properly executed and were delivered by the Doerings to John Dowd for recordation. The trust is not an attempted testamentary disposition such as would render the conveyances void.

It is undisputed that the property in question was all acquired by Clara Doering, except that Herman Doering claims some small part of the purchase price of the Mississippi property was contributed by him. All of the correspondence relating to the purchase of the Mississippi property was addressed to Clara Doering, and she alone signed the note for the purchase price. Herman Doering maintains that some improvements on the properties were paid for out of common funds of himself and his wife. These improvement expenditures were relatively small in comparison to the value of the properties. By the trust agreement Clara Doering made provision for Herman Doering for his entire lifetime. One sixth of the trust estate is to be distributed to Herman Doering's daughter or grandson. This is an entirely equitable distribution considering that the properties were acquired almost entirely by Clara Doering. In view of the facts and circumstances evidenced by the record, this trust agreement seems an entirely reasonable and just distribution of the properties.

No fiduciary relation having existed here, there having been no undue influence, or attempted testamentary disposition without being properly executed as a will, we are unable to find the trust agreement null and void. This is

472

rather a valid and binding trust agreement and the deeds to the Illinois and Mississippi properties were properly executed. For these reasons, the decree of the superior court of Cook County is reversed and the cause remanded with directions to enter a decree in accordance with the findings and report of the master.

*Reversed and remanded, with directions.*