*In re* ESTATE OF CLARENCE SHEDRICK, Deceased (Katie Bailey, Ex'r of the Estate of Clarence Shedrick, Petitioner-Appellant, *v.* Ernest M. Isby, Respondent-Appellee).

First District (5th Division)   No. 82—3067

Opinion filed March 16,1984.

Roberta Boarman, of Harth, Stroger, Boarman, Williams & Blue, of Chicago, for appellant.

Johnson & Armel, of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Katie Bailey, executor of the estate of Clarence Shedrick, appeals from an order declaring valid a quit-claim deed from Shedrick to Ernest M. Isby. She raises the following issues: (1) whether the deed was properly delivered and accepted; (2) whether the grantee's redelivery of the executed, unrecorded duplicate original deed to the executor affected the passing of title; (3) whether the court erred in finding that no fiduciary relationship existed between Shedrick and Isby and that there was no evidence of overreaching. For the reasons which follow, we affirm the judgment of the trial court.

The evidence in this case was heard by the trial court sitting without a jury. Following is a brief summary of the facts pertinent to our disposition.

Ernest Isby was the nephew, by marriage, of Clarence Shedrick. Isby lived with his aunt and Shedrick at various times during his childhood and, at the time of Shedrick's death, had resided in his home for almost two years. At Shedrick's request Isby managed his business affairs—collecting rents, depositing checks and paying bills—from April 1981 until Shedrick's death. Some of the checks payable to Shedrick were deposited in Shedrick's account, some were deposited by Isby in his own account. Isby routinely endorsed checks payable to Shedrick by signing Shedrick's name and also signed Shedrick's name on checks written on his behalf. Isby wrote checks on both his own and Shedrick's accounts in payment of Shedrick's bills.

Shedrick and Isby first discussed Isby's purchase of the property owned by Shedrick located at 2420 West Warren Boulevard, Chicago, in September 1980 and established a purchase price in January 1981.

On August 10, 1981, Isby was informed of Shedrick's imminent death. The next day he conferred with Shedrick's attorney regarding the purchase of the property and learned that title to the property could be transferred by quit-claim deed. On August 12 Isby purchased two quit-claim deed forms and filled in the names of the parties, address of the property to be conveyed, sales price and consideration paid. That day Shedrick and Isby executed duplicate original deeds before a notary public who then completed the certificate of acknowledgment. Isby gave Shedrick a check for $500, which check Isby later deposited in Shedrick's account. Isby testified that he and Shedrick agreed that Isby would pay the remainder of the purchase price in monthly installments of $405 each. Shedrick died two days later on August 14, 1981.

On September 22, 1981, Isby gave one of the duplicate original deeds to the executor's brother to give to the executor and retained possession of the other. The executor testified that her brother told her that Isby stated that he would like "first choice" if she ever wanted to sell the property. Isby testified that he gave the deed to the executor so that she could have it examined by Shedrick's attorney and thus determine its validity.

In the succeeding months Isby continued to manage the subject property as he had before Shedrick's death, with the permission of the executor, but made no attempt to collect rent on his own behalf. In October, Isby mailed a check for payment of real estate taxes on the property but stopped payment on the check when the executor stated that she was taking control of the property. Isby paid no bills related to the property nor did he tender payment of any of the remainder of the purchase price called for in the deed. Isby recorded the duplicate original deed in January 1982 but made no other claim of ownership from the time of execution of the deeds until the filing of the instant suit.

On December 3, 1981, the executor filed an inventory of Shedrick's assets valuing the subject property at $15,000. Thereafter, in March 1982, Isby filed a claim against the estate alleging ownership of the property by virtue of the quit-claim deed. Isby testified at trial that he considered the deed executed August 12, 1981, valid as to Shedrick and himself, but thought that it was not considered valid by governmental authorities until it was recorded.

On Isby's motion for a directed finding the trial court, by order

entered December 9, 1982, held that the August 12, 1981, quit-claim deed was a valid deed of conveyance. The court found that although there was a close relationship between Shedrick and Isby, there was no breach of a fiduciary relationship or evidence of overreaching. The court ordered that (1) Isby is entitled to immediate possession of the property; (2) Isby is entitled to all rentals since August 12, 1981, off-set by expenses and by the monthly installment payment to the estate; and (3) Isby shall pay the balance of the purchase price to the estate in monthly installments of $405 each. The executor appeals.

OPINION

The first issue raised is whether the deed was properly delivered and accepted. Before addressing this issue we must, however, consider whether the existence of a completed certificate of acknowledgment obviates the requirements of delivery and acceptance. See *Newton v. Village of Glen Ellyn* (1940), 374 Ill. 50, 27 N.E.2d 821.

■ A certificate of acknowledgment is evidence of the proper execution of an instrument by the persons named therein (*Shadden v. Zimmerlee* (1948), 401 Ill. 118, 81 N.E.2d 477; *Curtis v. Curtis* (1947), 398 Ill. 442, 75 N.E.2d 881; *People ex rel. Cohen v. Barrett* (1953), 349 Ill. App. 236, 110 N.E.2d 452) and permits the offering of a deed into evidence without further showing as to its genuineness (*Zilvitis v. Szczudlo* (1951), 409 Ill. 252, 99 N.E.2d 124). Although courts will presume that deeds duly acknowledged and recorded have been delivered and accepted, this presumption is rebuttable, not conclusive. (*Stanforth v. Bailey* (1931), 344 Ill. 38, 175 N.E. 784; *Talty v. Schoenholz* (1926), 323 Ill. 232, 154 N.E. 139.) Thus, the existence of an acknowledgment does not obviate the requirements that a deed be delivered and accepted to render it operative to pass title. It is proper, therefore, to consider the parties' contentions in this regard.

The executor contends that Isby failed to accept the conveyance of the subject property during Shedrick's lifetime and argues that there was, therefore, no valid conveyance. Isby asserts that his acceptance and possession of the duplicate executed deeds satisfies the requirement of acceptance.

■ "To render a deed operative to pass title there must be not only a delivery of the deed by the grantor but also an acceptance thereof by the grantee. The acceptance of the conveyance by the grantee is as essential to the passing of the title as the delivery by the grantor, and where the acceptance is not proved and the facts do not justify the presumption of law that the grantee has accepted, the title does not pass." (*Newton v. Village of Glen Ellyn* (1940), 374 Ill.

50, 53, 27 N.E.2d 821; *Gallagher v. Girote* (1961), 23 Ill. 2d 170, 174, 177 N.E.2d 103; *Talty v. Schoenholz*.) "Generally, where a deed imposes an obligation upon or creates any liability against a grantee an acceptance cannot rest upon a mere presumption but must be of an affirmative character." (*Seibert v. Seibert* (1942), 379 Ill. 470, 478, 41 N.E.2d 544.) The mere fact of possession of a deed by a grantee is not necessarily an acceptance thereof. (*Seibert*.) The acceptance of a deed must take place before the death of the grantor. *Redmond v. Gillis* (1931), 346 Ill. 223, 231, 178 N.E. 504.

In the instant case Isby testified that he discussed the purchase of the property with Shedrick and agreed upon a purchase price months in advance of the execution of the deeds herein. The evidence shows that Isby obtained the quit-claim deed forms and inserted the necessary information. He and Shedrick each signed the deeds before a notary public who completed the acknowledgement therein and certified that the signers "personally known to me to be the same persons whose names are subscribed to the foregoing instrument appeared before me this day in person, and acknowledged that they signed, sealed and delivered the said instrument as a free and voluntary act, for the uses and purposes therein set forth ***." These facts strongly indicate Isby's acceptance of the conveyance. Furthermore, it is significant, we believe, that Isby himself signed and acknowledged the deed as grantee although his signature was not necessary to pass title. His signing cannot be construed as other than his acceptance of the conveyance. Once the conveyance is accepted and title has passed, subsequent acts by the grantee will not negate such acceptance. Thus, Isby's failure to assert ownership of the property and his statement that he would like to purchase the property do not demonstrate nonacceptance of the conveyance but, rather, merely show his confusion regarding the legal effect of the deed.

Implicit in the trial court's judgment in the instant case was a finding that Isby had accepted the conveyance. This court will not disturb the findings of a trial court and substitute its own opinion unless the holding is manifestly against the weight of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43; *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58, 349 N.E.2d 399.) The evidence presented herein supports the finding of the trial court and such finding, therefore, will not be disturbed.

The next issue raised is whether the grantee's redelivery of the executed, unrecorded duplicate original deed to the executor affected the passing of title. The executor contends that Isby's delivery to her of one of the executed duplicate original deeds vested equitable

title in the grantor and is, therefore, an effective defense against Isby's claim to title. The general rule is that after title has been conveyed "delivery back by the grantee, to the grantor, of an unrecorded deed could not affect the legal title to the land, but such a delivery with the intention that the deed be destroyed for the purpose of revesting title in the grantor passes an equitable title." (*Crossman v. Keister* (1906), 223 Ill. 69, 81, 79 N.E.2d 58.) In the instant case there was conflicting evidence as to the purpose for which Isby gave one of the unrecorded original deeds to the executor, but it is undisputed that he retained possession of the duplicate original deed, which deed he later recorded. The trial court implicitly found that the evidence does not show the requisite intention by Isby to divest himself of title. We are unable to say that the finding was against the manifest weight of the evidence. (See *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) Therefore, we conclude that the executor's contention is without merit.

■ The third issue raised is whether the court erred in finding that no fiduciary relationship existed between Shedrick and Isby and that there was no evidence of overreaching or undue influence. The executor in substance contends that the court's findings in this regard were contrary to the manifest weight of the evidence.

The executor first argues that the trial court erred in its finding that although a "close relationship" existed between Shedrick and Isby, there was no fiduciary relationship. Our supreme court has stated that a fiduciary relationship "involves the idea of trust and confidence and may be found to exist in any legal relationship where special confidence is imposed on one side and domination and influence is on the other." (*Dyblie v. Dyblie* (1945), 389 Ill. 326, 333, 59 N.E.2d 657.) Proof of a fiduciary relationship must be "clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion." *Kolze v. Fordtran* (1952), 412 Ill. 461, 468, 107 N.E.2d 686; *Dyblie.*

In the instant case the evidence showed that Isby endorsed and deposited Shedrick's pension checks, collected the rents from Shedrick's property and paid Shedrick's bills. There was also testimony that Isby commingled Shedrick's and his own funds in the performance of such ministerial tasks. While it could be inferred from the evidence that Shedrick imposed confidence in Isby, the evidence indicated no domination or influence of Shedrick on Isby's part. The evidence supports the trial court's finding that no fiduciary relationship was established and such finding, therefore, will not be disturbed. See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.

■ The executor next contends that the facts and circumstances of the instant case show that Isby exercised undue influence in procuring Shedrick's signature on the deed in question. The party attempting to set aside a deed normally has the burden of proof in showing that such deed was procured by fraud or undue influence. (*Klass v. Hallas* (1959), 16 Ill. 2d 161, 165, 157 N.E.2d 261.) The nature and extent of the undue influence to be proved must be "such influence *** as to dominate and control the will of the *** grantor and cause him to make a disposition of his property which he otherwise would not have made." (*Lord v. Reed* (1912), 254 Ill. 350, 357, 98 N.E. 553; *Kolze v. Fordtran* (1952), 412 Ill. 461, 470, 107 N.E.2d 686.) However, where the existence of a fiduciary or confidential relationship is proved by the grantor, and where the grantee is the dominating party in the relationship, any transaction between them by which the grantee profits is presumed fraudulent. (*Brown v. Commercial National Bank* (1969), 42 Ill. 2d 365, 369, 247 N.E.2d 894, *cert. denied* (1969), 396 U.S. 961, 24 L. Ed. 2d 425, 90 S. Ct. 436.) In such a case the burden shifts to the grantee to show that the transaction was voluntary on the part of the grantor and was without undue or improper influence on his own part. (*McFail v. Braden* (1960), 19 Ill. 2d 108, 117, 166 N.E.2d 46.) As there was no fiduciary relationship in the instant case, the burden was on the executor to establish undue influence on Isby's part.

The record herein shows that months before the execution of the deed Shedrick and Isby had agreed to Isby's purchase of the property. The deed stated a consideration of $15,080 and there is no contention that this was an unfair price. Indeed, the inventory of Shedrick's assets filed in the instant case valued the property at $15,000. After careful examination of the entire record in this cause we conclude that the executor failed to meet her burden of proof. The evidence of Isby's conduct failed to prove that he overcame Shedrick's will and, therefore, we are unable to say that the trial court erred in finding that there was no overreaching on Isby's part.

For the foregoing reasons the judgment is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.