(No. 97-CC-1570— ▮▮▮▮▮)

AMOS L. SMITH, Claimant, *v.* THE STATE OF ILLINOIS and ILLINOIS DEPARTMENT OF NATURAL RESOURCES, Respondents.

*Order filed August 4, 2000.*

BURNSIDE, JOHNSTON, CHOISSER AND SHEAFOR (JACK JOHNSON, of counsel), for Claimant.

JIM RYAN, Attorney General (PETER C. BEARD, Assistant Attorney General, of counsel), for Respondents.

ORDER ON MOTION TO DISMISS

EPSTEIN, J.

This is an adverse possession claim to a 20-25 feet wide strip of land in Fayette County, part of a former railroad right-of-way, that has been owned by the State and

used by the Department of Natural Resources ("IDNR") as part of the Ramsey Lake State Park (the "Park") Prairie Nature Preserve, and is before us on the Respondent's jurisdictional motion to dismiss.

## Nature of the Claim

The Claimant alleges that "for more than 50 years * * * [he and his] predecessors in title have openly used, occupied and possessed, for agricultural purposes" the disputed strip of land, which lies between a north-south roadway through the Park and the State's west property line. (See complaint, par. 5.) Claimant also alleges that the roadway "has been improved and maintained by the Village of Ramsey for more than 25 years * * * and has been used openly, adversely, continuously and uninterruptedly by the public under a claim of right for more than 15 years * * *. (See complaint, par. 3.) Claimant seeks a declaratory judgment that the roadway is a public road and that Claimant is the owner by adverse possession of the disputed strip of land.

## The Motion to Dismiss

The Respondent's motion pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619) to dismiss is based on the State's March 31, 1999, conveyance of the disputed property to the Village of Ramsey ("Ramsey" or the "Village"), over which this Court lacks jurisdiction, and which the Respondent asserts is currently the party in title against which the Claimant's adverse possession claim now lies.

The Claimant contests the Respondent's motion to dismiss on a single legal ground: that the Village did not duly accept the conveyance from the State, and therefore title to the disputed strip of land has not passed to it,

hence the State remains the legal owner and true party in interest against which the adverse possession claim lies, and over which this Court has exclusive jurisdiction. (See "Answer to Motion to Dismiss, 2-3; Brief of Claimant in Opposition to * * * Motion to Dismiss.")

The parties have both submitted evidentiary material in support of their positions. The Respondent submitted title documents[1] in its departmental report, as well as Ramsey Village Board meeting minutes; the March 31, 1999, deed from the IDNR to Ramsey "in compliance with Public Act 90-670"; the 1996 water supply agreement between the IDNR and Ramsey; and the March 31, 1999, amendment by Ramsey and IDNR to the water supply agreement.

The Claimant has submitted affidavits of the mayor and clerk of Ramsey; two Ramsey ordinances concerning its water service rates; excerpts from minutes of Ramsey Village Board meetings; and the March 31, 1999, IDNR-Ramsey amendment to the water supply agreement.

### The Undisputed Facts
### as to the IDNR-Ramsey Conveyance

The following undisputed facts emerge from the parties' document and affidavit submissions, as well as from the factual positions taken in their papers:

1. The IDNR and Ramsey had negotiated an agreement whereby the IDNR would convey the former railroad right of way portion of the Park property to Ramsey in return for Ramsey lowering the water rates (to in-village rates) that it now charges IDNR for providing water service to the Park (at out-of-village rates);

---

[1] The documents show, *inter alia*, that the State acquired title to the strip of land in a 1989 conveyance of right-of-way from the Illinois Central Railroad Company.

2. The Director of IDNR executed and delivered the deed to the land to Ramsey on March 31, 1999 as authorized by Section 970 of Public Act 90-760;[2]

3. Ramsey physically received the deed, but has not recorded it;

4. On March 31, 1999, Ramsey's mayor and clerk executed an amendment to the pre-existing water service agreement between the parties; the amendment provided (a) that "water bills assessed to the Park will follow the * * * rates * * * for billing in-town water customers" and (b) deleted the provision in the Agreement that granted a "right-of-way on Park property * * * sufficient * * * to install, repair or replace the Park water service";

5. Ramsey has not lowered the water rates charged to IDNR for the Park, nor adopted an ordinance amending the prior rates to do so (which is necessary as Ramsey's water rates are set by ordinance); the IDNR is still being charged the higher out-of-village rates by Ramsey;

6. Ramsey's mayor and clerk assert that the Village did not intend to accept the deed (or title to the property) until the dispute between the Claimant and the State is resolved in this Court;

7. At a Ramsey Village Board meeting on July 19, 1999, the following transpired according to the official minutes:

> "Ken Larimore told the Board he received a call from the State about the strip of land the State wants to give [sic] to the

---

[2] P.A. 90-760, effective August 14, 1998, entitled "AN ACT concerning property," is a special act that authorizes several land transactions by various State agencies. Section 970 authorizes the Director of IDNR "on behalf of the State" to deed portions of the former Illinois Central Railroad Company right-of-way in Fayette County to the Village of Ramsey "for and in consideration of $1.00 and other good and valuable consideration * * *."

Village. Ken told the Board he has also received correspondence from Amos Smith's attorney ° ° °. The full Board was in agreement that we will stay out of this matter and not accept the strip of land until Amos Smith and the State get everything worked out."

## The Parties' Positions

Respondent contends that Ramsey has accepted the deed, despite its failure to record it, and that its contemporaneous intention is confirmed by its execution of the amendment to the water agreement on the day it received the deed. Respondent urges that not only does that amendment reflect the parties' water rate agreement (and thus the consideration for the land transfer), but it also eliminates the village's prior maintenance easement on the Park property which is senseless unless the village was obtaining a different right to access its water lines there.

The Claimant argues (See answer to motion to dismiss, at pars. 2-3):

"The Mayor asserts that his execution of the Amendment was conditioned upon resolution of the pending litigation (this Court of Claims actions); in fact, it was simply not authorized and is null and void. ° ° °. No amending ordinance was adopted establishing an in-village rate for the Department ° ° °. Thus the Department is being charged the higher, non-resident rate. The actions of the village are totally consistent with its asserted position of non-acceptance.

The Respondent's position is reduced to this: The Village of Ramsey received a deed from the State ° ° ° and has not sent it back. No consideration has been given to the State; the Mayor signed the amendment without authority in law and the amendment is void. Finally, the village officers deny acceptance and the actions of the village are wholly consistent with its espoused position: the deed has not been recorded and the Department continues to receive the out-of-village higher water rate."

## Discussion

The parties agree, as does this Court, on the underlying principles of law that apply here, but which do not by themselves resolve this "acceptance" issue, which ultimately turns on the manifested *intent* of the Village to accept or not to accept the State's deed when it was delivered.

First, it is clear in Illinois that recording of a deed is not a condition of its effectiveness to transfer an interest in real estate as between the grantor and grantee, and thus Ramsey's failure to record the State's quitclaim deed does not affect its operation as a conveyance. (See, *e.g.*, *Lucas v. Westray* (1951), 408 Ill. 243, 248; *In re Application of Cook County Treasurer* (1st Dist. 1998), 185 Ill. App. 2d 428, 433.) A deed also need not be recorded in order to be delivered. *Farmers State Bank v. Neese* (4th Dist. 1996), 281 Ill. App. 3d 98, 195.

Second, the conveyance of legal title to land does not arrest the running of the applicable statute of limitations for purposes of adverse possession claims against that land; the grantee takes the title that the grantor had as of the time of the conveyance, and that conveyed interest is subject to any adverse possession rights or claims then existing in another party. (See, *e.g.*, *Shortall v. Hinckley* (1863), 31 Ill. 219.) Thus the validity or invalidity of the conveyance to Ramsey does not affect the merits of the Claimant's underlying adverse possession claim.

Third, there is a presumption that a duly executed and delivered deed has been accepted. This presumption may be rebutted. However, as the Claimant emphasizes, it has also been said in *In re Estate of Shedrick* (1st Dist. 1984), 122 Ill. App. 3d 861, at 865, that

"'* * * where a deed imposes an obligation upon or creates any liability against a grantee an acceptance cannot rest upon a mere presumption but must be of an affirmative character.' (*Seibert v. Seibert* (1942), 379 Ill. 470, 478, 41 N.E.2d 544.) The mere fact of possession of a deed by a grantee is not necessarily an acceptance thereof."

The Respondent ultimately relies on the presumption of acceptance and on three undisputed points to support its position that Ramsey accepted the conveyance: (1) Ramsey accepted physical receipt of the deed and did not return it; (2) Ramsey executed the amendment which affirmatively

showed its contemporaneous intent to implement the deed-for-reduced-water-rates agreement and thus to accept the land; and (3) Ramsey's execution of the amendment abandoning its easement across the disputed land is inconsistent with a refusal to take ownership of the land and thereby retain access to its water lines.

The Claimant—with the apparent support of the Village although it is not a party here—replies that its failure to return the deed is not itself dispositive and that the amendment to the water service agreement was "not authorized" and "without authority in law" and is "void." The Claimant offers no rebuttal to the access point.

We agree that the physical receipt of the deed and failure to return it are not dispositive. These facts are not irrelevant, however. They support a finding of acceptance and are inconsistent with a rejection, though not with the wait-and-see intent claimed by Ramsey and the Claimant.

The Claimant's effort to disclaim any effect of the amendment is another matter. Because the Claimant has not supported its contention that the amendment was "void"—he has not even shared his (or Ramsey's) theory of why the amendment was "unauthorized" as a matter of law—we cannot evaluate the merits of that contention. However, whether or not the amendment was binding or effective, it was clearly a contemporaneous action of two Village officers that, standing alone, demonstrates an *intent* or an *understanding* on their part that the land-for-rates deal was then being consummated, at least partly. The contemporaneous execution of the amendment by the mayor and clerk supports acceptance, and is inconsistent with the wait-and-see intent now asserted by them.

The Claimant advances several points in support of his position that the Village did not accept the State's conveyance: (1) Ramsey's physical acceptance of the deed

was conditional upon the completion of this litigation in this Court; (2) that the effectiveness of the amendment was "conditioned on acceptance of the deed," which did not occur; (3) that the agreement was void (discussed above); (4) that the deed-for-rate-reduction arrangement fails for lack of consideration because the Village has refused or failed to give the stipulated consideration for the deed because (a) the amendment was void, (b) Ramsey has not amended its water rates ordinances and (c) it has continued to bill the IDNR the higher rates; (5) that the village board has expressly refused and delayed Ramsey's acceptance; and (6) that because acceptance would impose affirmative duties on Ramsey (to lower its water rates to IDNR), Illinois law requires an affirmative act of acceptance.

Claimant's first and second points, asserting "conditions," is supported by the affidavits of Ramsey's mayor and clerk. Those affidavits are entirely conclusory and fail to provide any factual basis for the asserted conditions beyond those two officials' after-the-fact statements of their own prior intent. There is not a shred of conditional language in the amendment or in the mayor's and clerk's execution of that document. Nothing in the transactional document shows any effort or intent to impose "conditions" on either the acceptance of the deed or on the effectiveness of the amendment. The unqualified and unambiguous terms of the written documents cannot be modified by subsequent oral testimony.

Similarly, the village board members' July 19, 1999 statement of their "agreement that we will * * * not accept the strip of land until" the Smith-State dispute is "worked out" is irrelevant, and probably not even admissible. This after-the-fact pronouncement by village officials cannot alter the dispositive intent of March 31, 1999

when the deed was received. The Village either accepted or did not accept at that time. Its board members' "agreement" 3½ months later cannot alter what had already occurred if it had occurred. Moreover, the members' "agreement" reflected in the Ramsey Village board minutes is not even an official action: there was no motion and no vote.

The failure of consideration argument is also without merit. Claimant asserts the Village's refusal or failure to lower its water rates as a failure of consideration of the state-village agreement. However, only the State could assert the Village's failure to meet its obligations as a ground to rescind the transaction and the deed. The Village surely could not assert its own breach of the agreement to avoid the transaction; a third party like the Claimant lacks standing to assert such a "defense" to other parties' land transaction.

Moreover, the deed is not conditioned on performance by the Village. There is no basis in the deed, nor has any authority been cited to us, for voiding the conveyance due to the Village's inaction in lowering its water rates. If an enforceable intergovernmental agreement between the State and the Village was created—an issue that we do not address here—then the IDNR may have some enforceable rights against Ramsey, but that is a matter of contract for another court and is not a matter of the validity of the State's unconditional deed to the Village in this case.

Finally, we come to the Claimant's assertion that an affirmative acceptance act is required due to the imposition of affirmative duties on the grantee, Ramsey, by this conveyance, under *In re Estate of Shedrick* (1st Dist. 1984), 122 Ill. App. 3d 861, 461 N.E.2d 581. Claimant argued that the Village became obligated to lower its water rates upon acceptance of the deed, which is an affirmative

obligation within the *Shedrick* rule. We disagree. First, the articulated principle concerns affirmative obligations imposed by the deed itself. In this case, any affirmative duty on the Village to lower its water rates for the State Park derives not from the deed, and not from any condition of the conveyance or even of the land itself, but instead arises from a separate agreement between the grantor and grantee. *Shedrick* and its antecedents do not require an affirmative acceptance in this circumstance. Indeed, in *Shedrick, supra*, the Appellate Court held that there *was* an acceptance of a disputed deed, affirming an implicit finding of the trial court, without any affirmative act of acceptance. Thus the *Shedrick* principle was *dictum* there.

This analysis takes the case back to the posture first asserted by the Respondent. The contemporaneous acts of the parties reflect an acceptance. The after-the-fact pronouncements and inaction of the Ramsey officials reflect a belated effort to wait and let the State and Mr. Smith slug out their ownership fight in this court (presumably without the Village's involvement). This Court would cheerfully adjudicate that adverse title dispute—about which we here intimate no opinion whatsoever—if we had jurisdiction to do so. But the Village's late disclaimers cannot and do not retroactively alter its prior acceptance of the IDNR conveyance to it of title to the disputed land.

This Court must therefore dismiss this case for want of jurisdiction over the Village of Ramsey, the legal title holder of the disputed land, and remit Claimant Amos Smith to his remedies against the Village in the constitutional courts of Illinois.

## Conclusion

For the foregoing reasons, the Court finds that this claim fails to state an action against the State, which is no

longer in title or interested in the disputed property, and that this Court lacks jurisdiction over the successor party in interest, the Village of Ramsey.

Wherefore, it is hereby ordered: This claim is dismissed.