(No. 30061.— ▮▮▮▮▮▮▮▮▮▮)
CLAYTON L. DAVIS *et al.*, Appellees, *vs.* VIOLA MELVINA BRICKEY *et al.*, Appellants.

*Opinion filed September 18, 1947.*

JOHN B. HARRIS, of Granite City, for appellants.

PHILIP G. LISTEMAN, of East St. Louis, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from the circuit court of Madison county wherein a decree was entered, in accordance with the prayer of the complaint, reforming a deed from one Emma Bashick to Clayton L. Davis and Ida Davis, appellees herein. The appellants are Viola Melvina Brickey, Emma Bashick's daughter and only child, and her former husband. The brief of appellees states that the report of proceedings was filed in the trial court on January 24, 1947, which was more than fifty days after November 27, 1946, the date that appeal was perfected. However, the record shows that the report was filed on January 16, 1947, which was in apt time under Rule 36 of this court.

The complaint as amended set forth in essence that on or about December 7, 1944, Emma Bashick came to make her home with the appellees, Clayton L. and Ida Davis, and agreed at that time to give them a deed to her home place in Madison county, in return for the promises of the plaintiffs to take care of her for the rest of her life; on July 13, 1945, a warranty deed was given by Emma Bashick to Ida Davis and it was filed for record in Madison county on July 27, 1945; that it was the intention of Emma Bashick to convey her home place to Ida Davis but that she did not have an abstract of the premises in her possession and had an erroneous description which was inserted in the deed. The complaint further states that a second deed was executed to allow the property to be deeded to Clayton Davis and Ida Davis in joint tenancy; that it was later discovered that the wrong description had been used in these deeds and that at the time the correct description was obtained, Emma Bashick was ill and unable to execute a correcting deed; that it was her intention to convey to the plaintiffs the property actually owned by her and, therefore, it was prayed that, upon a hearing of the cause, the court decree the plaintiffs the sole owners of the real estate and that the deed be reformed.

The answer of the defendants denied the allegations of the complaint except that they admitted that Emma Bashick was now dead and set forth the additional following affirmative facts: That the Davises operated a nursing home in Sangamon county prior to December 7, 1944; that Emma Bashick was without funds of her own and that she was dependant upon an old age pension of the State of Illinois for her support; that she lived at her home in Granite City, alone, and her physical condition finally grew so bad it was necessary for her to have personal attention; that it was decided she must be immediately removed from her home and placed in a nursing home and that application was made to Clayton Davis and his wife to take Emma Bashick into their home in return for which the public aid authorities of the State of Illinois would pay them $40 a month for her care; that the Davises protested the amount to be paid and contended they should be paid $65 a month for this service, but finally agreed to accept Emma Bashick at the price of $40 a month and that in accordance with this agreement Emma Bashick was taken to the nursing home. The answer further sets forth that Emma Bashick was not only disabled physically but also was greatly deteriorated mentally and that she did not have the mental capacity to make the deeds in question, and, if she did make them, she did not know what she was signing or what she was doing; the answer also sets up fraud in the procurement of the deed, lack of consideration, undue influence and a fiduciary relationship. It further alleges that since the death of Emma Bashick, her last will and testament was admitted to probate in the probate court of Madison county and an executor appointed, that the executor has been qualified and that there is an outstanding bill for the funeral, the cost of the cemetery lot and other costs and there is no means of paying the same except by selling the real estate of Emma Bashick and using the proceeds to pay these claims aggregating seven or eight hundred

dollars. It is further alleged in the answer that the entire value of the real estate will be necessary in order to pay the claims against the estate and the costs of administration and that there are no other assets of the estate. Mrs. Bashick died on November 24, 1945.

Testifying for the appellees were Clayton L. Davis and G. W. Horsley, the attorney for the appellees who drew the deed, and in rebuttal, a minister and a doctor who resided in Springfield. For the defendants, there were 15 witnesses testifying or offered, many of whom gave an opinion as to Mrs. Bashick's mental condition.

For the plaintiffs, Clayton L. Davis stated that he ran the nursing home, that he and his wife still operated the home, that he was a brother of Emma Bashick, that she was a widow and that she had one daughter, who was the defendant, Viola Melvina Brickey. Also for the plaintiff, Horsley, the attorney, testified that he had drawn up the deeds of October, 1945. Horsley had represented the Davises since his return from the service, had drawn the deeds of October, 1945, had prepared the complaint and amended complaint in the cause, and on the day of trial had appeared for the purpose of withdrawing from the suit in order that he might testify in the proceeding. He testified that there were three deeds involved. The first was given by Mrs. Bashick to Mrs. Davis in July, 1945, prior to Horsley's return from the service. Horsley had obtained this deed from an attorney who had represented the Davises in his absence and had suggested to the Davises that it might be better if the deed were made in joint tenancy. He prepared deeds in October of 1945; one running from Mrs. Davis and her husband to Emma Bashick, the other running from Emma Bashick to Davis and his wife in joint tenancy. He further stated that Mrs. Bashick took part in the conversation concerning the deeds and that she had full possession of all her faculties at the time the property was deeded over. He also stated that he had

discovered that the description in these deeds was not the correct description and had made a trip to Edwardsville to obtain the proper description for the preparation of new deeds. At the time he obtained the proper description, Mrs. Bashick was on her deathbed and he was unable to have the correction made in her lifetime. He stated that he put $1.10 in revenue stamps on the deed of October 24 because he figured $1000 would be a fair consideration for the board and room the Davises were giving Mrs. Bashick over and above the payment by the State. This concluded the plaintiffs' evidence on direct.

It is affirmatively shown that the sum of $40 per month was paid to the appellees beginning with December, 1944, up to November, 1945, the payments being made through the old age pension of Mrs. Bashick. The Illinois Public Aid Commission transferred the records in her case from the Edwardsville office to the Springfield office of that organization.

Six persons testified for the defendants as to the mental condition of Emma Bashick. Some of the persons who were allowed to testify as to the mental condition of Emma Bashick were relatives, who visited her frequently and knew her intimately. The proof of these persons tended to show that Mrs. Bashick's mental condition had been affected by her age and her illness; that she was forgetful and would repeat things over and over in the same conversation; that she wrapped a radio and birdcage in blankets during mild weather because of the fear that these objects would catch cold; that she lost things and misplaced things and sometimes was not herself; that she imagined that persons came to see her and proposed marriage. Further that she imagined her husband was in the service and that he was 47 years old. One witness, Reba Reincke, testified that the day after Mrs. Bashick died, Mrs. Davis called her on the phone and, when asked if Mrs.

Bashick had signed the house over to her, she replied, "No, nothing like that went on," and, in explanation of an item in the newspaper noting the transfer, Mrs. Davis said, "The crazy lawyers made a mistake." It was the opinion of all of these witnesses that Mrs. Bashick did not have sufficient mental capacity to manage and transact business affairs.

The township supervisor stated that he had known Emma Bashick for a number of years; that he had been to visit her at her home every two or three weeks prior to her being taken to Springfield. He stated that she was forgetful; that on many occasions she would forget his visits to her; that she was senile; that she was afraid she would lose her place and that they had attempted to get her into a home. He stated that she was getting old and forgetful but that he would not say that she was mentally off. A social worker with the Illinois Public Aid Commission also testified that she visited Mrs. Bashick several times prior to her being taken to Springfield. She stated that on those occasions she found Mrs. Bashick's person and clothing dirty; that she would contradict herself and that she was very incoherent in her thoughts; that she could not remember how much money she was getting from the State. The social worker stated that she had formed an opinion from her observations of Mrs. Bashick as to her mental condition and felt that she should not be left alone, as she was not physically or mentally able to take care of herself. Another investigator for the commission stated that she had visited Mrs. Bashick at the nursing home in Springfield and found her unable to care for herself. She further stated that during her visits to the home she had discussions with Mrs. Davis as to the amount of money being received for Mrs. Bashick's care. She told the court that Mrs. Davis continually requested more compensation and made these requests by telephone and through her attorney. She told of one conversation

wherein Mr. and Mrs. Davis requested more money for payment and that if such money was not forthcoming, they were sending Mrs. Bashick back by ambulance.

The rebuttal witnesses for the plaintiffs herein testified as to their opinions of Mrs. Bashick's mental capacity. The preacher testified that he was the minister for the United Brethren Church in Springfield and that he had held services at the Davis home; that he became acquainted with Mrs. Bashick there and that Mrs. Bashick would ask him to sing certain things and ask about certain scriptures in the Bible. In his opinion he stated that she was of sound mind and memory during the year 1945. The physician and surgeon testified that he had visited Mrs. Bashick and that he had an opinion that she was in fair general health and general mental condition and sound for a person of her age. The doctor did not testify as an expert but merely as a lay witness.

The testimony for the appellants further disclosed that Mrs. Davis had requested more money but that it could not be forthcoming because the Davises did not operate an approved nursing home; that Ida Davis in a letter dated in August, 1944, said that Mrs. Bashick did not know any of the persons in the home; that after Mrs. Bashick's death, Ida Davis denied any knowledge of any deed to her; that Mrs. Bashick was worried about losing her home to the State and wondered if she should deed it to the daughter to allow the daughter to have the remainder of the property after just debts and funeral expenses had been paid.

The appellants contend that the deeds were without consideration and point out that the only testimony supporting the legality of the deed was that of Horsley, the appellees' attorney; that the case presented was not a case where a court of equity will reform a written instrument; that there was a fiduciary relationship existing between Emma Bashick and the Davises; that Emma Bashick did not have the requisite mental capacity to make the deeds in ques-

tion; and that the court erred in refusing to permit the defendants to testify.

The appellees, on the other hand, contend that the evidence entitled them to a decree of reformation of the deed; that the appellants did not sustain their charge that the deeds were without consideration; that the defense of mental incapacity was not proved; and that there was no fiduciary relationship between plaintiffs and Mrs. Bashick proved by the testimony in the cause.

It is true, we have held that an agreement to care for the grantor in a deed is a good and valid consideration for the delivery of such deed, but the proof of any such agreement in this case is far from satisfactory. The only person testifying for the appellees as to consideration and delivery of the deed in question is the attorney employed by them to transact all of their legal business. It is interesting to note that there are three deeds in question. The original deed was made in July, 1945, prior to attorney Horsley's return from the service. However, the payment of $40 per month continued to be paid and accepted by appellees until November of that same year.

The scrivener who drew the deed in July, 1945, was not called upon to testify, and it is obvious that without the testimony of attorney Horsley, the appellees' case would fall for want of proof. His interest in the case and his close business relationship with the appellees naturally affect the weight to be given his testimony.

The cases relied upon by the appellees in support of their contention that a valid consideration was given by them in support of the deeds (*Hesker* v. *Shaffer,* 394 Ill. 489; *Rendleman* v. *Rendleman,* 156 Ill. 568; *Stannard* v. *Aurora, Elgin and Chicago Railway Co.* 220 Ill. 469; and *Russell* v. *Robbins,* 247 Ill. 510,) all present factual situations far different from the cause under consideration. This is not a suit to set aside a deed but to reform a deed received from Emma Bashick.

Under the facts as disclosed by the record in this case the contentions that there was a fiduciary relationship existing between Emma Bashick and the Davises and that Emma Bashick did not have the requisite mental capacity to make the deeds in question are so closely interrelated that it is quite impossible to consider them separately. We have considered the question of fiduciary relationship many times. In *Staufenbiel* v. *Staufenbiel,* 388 Ill. 511, we said, "A fiduciary relation exists in all cases in which there is confidence reposed on one side and a resulting superiority and influence on the other. It is settled law that courts of equity will not set any bounds to the facts and circumstances out of which a fiduciary relationship may spring. The fiduciary relationship, with its legal incidents, includes not only all legal and technical relations, such as guardian and ward, attorney and client, principal and agent and the like, but it extends to every possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other. * * * The relationship need not be legal, but it may be either moral, social, domestic, or merely personal." We further said, in the same case, "When a fiduciary relationship is established, the burden is on the one profiting by the transfer of the property to show that it was procured fairly and without the exercise of undue influence."

The question of mental capacity to make the deed in question is controlled by the state of mind of Emma Bashick when she resided in the nursing home of appellees in Springfield. During the time she resided in Granite City, she had often expressed concern over the ultimate disposition of her property and also expressed a desire that it be deeded to her daughter. It is obvious from a reading of the record that Emma Bashick was not a well person, either physically or mentally, prior to entering the nursing

home. The testimony clearly shows that she was not in possession of all of her faculties. During her stay at the nursing home, case workers of the Illinois Public Aid Commission state positively that she needed care both physically and mentally.

When Emma Bashick entered the nursing home of the appellees in Springfield, she placed herself in the sole care, control and custody of the appellees. The meager testimony in the record as to her stay in the nursing home indicates that she reposed confidence in them. It can be presumed, inasmuch as Emma Bashick was a bed patient and unable to serve herself in any way, that there was a certain amount of domination and influence on the part of the Davises over Emma Bashick. Under these circumstances, we hold that a fiduciary relationship existed and that the Davises had the duty of proving that the transaction was free from any taint. As was said in the *Staufenbiel case,* the fiduciary relationship can exist in a moral or social sense. There was no evidence in the record presented by the appellees to show that, at the time of the giving of the first deed in July, 1945, Emma Bashick had any advice from any disinterested party or that she was advised as to her rights in granting the property to the Davises. It is not shown that the lawyer representing the appellees at the time of the second deeds in October, 1945, explained thoroughly to Mrs. Bashick what the conveyance meant other than an explanation of the law regarding joint tenancy. The October deeds were executed just one month before the death of Mrs. Bashick.

We have held that mental condition is proper to be considered as strengthening the inference of undue influence which the law draws from an established fiduciary relation and that where the donor is of a weak or feeble intellect, the presumption of undue influence will require stronger evidence to remove it and that in such a case of

mental weakness the donee has the burden to prove both the fairness of the transaction and the mental capacity of the grantor. (*Berry* v. *Egan,* 291 Ill. 377.) A reading of the record herein discloses that the proof of the appellees in this cause as to the mental condition of Emma Bashick does not satisfactorily contradict the proof as to her mental condition when she entered the nursing home in Springfield, nor does it show any recovery on her part, either physical or mental, during her stay.

The law of Illinois is broad regarding fiduciary relationships. We have held that the term itself as used in this connection is a very broad one and where such relation exists relief is granted in all cases in which influence has been acquired and abused,—in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. (*Beach* v. *Wilton,* 244 Ill. 413.) Under the holdings in the foregoing cases, we hold that Emma Bashick was in such mental condition that it was incumbent upon the persons to whom she entrusted her sole care, custody and control to act towards Emma Bashick with the highest degree of care and fair dealing. The appellees in this cause have not sustained the burden of proving that such was the case.

For the reasons stated in this opinion, the decree is reversed and the cause remanded to the circuit court of Madison county, with directions to enter an order not inconsistent with this opinion.

*Reversed and remanded, with directions.*