(No. 30826.—

P. L. JONES, Appellant, *vs.* FLORA ROBLEY *et al.*, Appellees.

*Opinion filed January 19, 1949.*

RAYMOND L. JONES, of Chicago, and DENIS A. Mc-GRADY, of Carlinville, for appellant.

L. M. MARLAN, and MURPHY & MURPHY, both of Carlinville, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from the circuit court of Macoupin County, wherein a decree was entered dismissing appellant's complaint for want of equity. The appellant, P. L. Jones, brought this suit to set aside two deeds whereby his wife, Dora Zelmer Jones, now deceased, purported to convey certain property located in Carlinville, Illinois, and Morton County, North Dakota, to her brother, Edward C. Mieher, now deceased, and to set aside two subsequent deeds from Edward C. Mieher to certain of the defendants. Appellant also prayed that the defendants be required to reconvey said property, or be declared to hold the same in trust for the heirs of Dora Zelmer Jones; that an accounting be

had for the income from said property subsequent to her death; and for such other relief as equity may require.

The amended complaint, filed March 15, 1947, sets forth in essence that appellant married Dora Zelmer Jones on July 27, 1933; that they lived together for eighteen months in a dwelling owned by Dora Zelmer Jones located in Carlinville, and that she also owned certain property located in Morton County, North Dakota; that Edward C. Mieher, a brother of Dora Zelmer Jones, by use of duress, coercion, undue influence and without consideration, while she was mentally incompetent, induced her to convey the said property to him by deeds dated December 17, 1934, unknown to appellant, and which deeds were not recorded until November, 1940. The amended complaint further states that on April 10, 1941, Edward C. Mieher and Irma F. Mieher, his wife, executed deeds purporting to convey the said property to Flora Robley, Millie Klaus, Clara Talley, Mathilda Walter, Fred Mieher and Elmer Mieher, and that said deeds were procured and given as part of the plan and conspiracy of Edward C. Mieher to deprive Dora Zelmer Jones and appellant of their property rights.

It is further alleged that appellant is the surviving spouse of Dora Zelmer Jones, deceased; that there were no children born to her or adopted by her; that the defendants induced her to separate from appellant while she was mentally ill; that subsequent to the execution of the deeds by her, on December 20, 1934, Edward C. Mieher, the grantee of the said deeds, filed a petition in the county court of Macoupin County asking that she be adjudged incompetent; that on January 2, 1935, the said Edward C. Mieher was appointed as conservator of her person and her estate; that he was succeeded as conservator by John P. Denby, and that on March 11, 1936, the said Denby, as conservator, filed a suit in the circuit court of Macoupin County to annul the marriage of appellant and Dora Zelmer Jones.

In addition it is alleged that Dora Zelmer Jones died intestate, on September 26, 1941, while a patient in the State hospital at Jacksonville, Illinois, and that she left her surviving appellant, and Flora Robley, Millie Klaus, Clara Talley, Fred Mieher, Elmer Mieher and Edward C. Mieher, her brothers and sisters, and Melvin Walter and Mildred Wells, children of Mathilda Walter, a predeceased sister, as her only heirs-at-law; that thereafter Edward C. Mieher died intestate, on March 2, 1942, leaving him surviving his widow and four children who, along with the survivors named above, are appellees here. It is also alleged that under the laws of North Dakota appellant is entitled to equitable title in the North Dakota property as sole heir-at-law of his deceased wife, and that he is entitled to a one-half interest in the Carlinville property as an heir of his deceased wife.

The answer of the appellees admits many of the pertinent allegations of the complaint, but in substance denies that Dora Zelmer Jones owned the real estate at the date of her death; denies that either they or Edward C. Mieher, deceased, were guilty of fraud, duress or undue influence, or that the deeds in question were procured while she was in a weakened condition or incapable of understanding the consequences of her acts; and denies that the existence of the deeds was not known to appellant. The answer further denies that the deeds of Edward C. Mieher and his wife were part of a fraudulent scheme or conspiracy, or that any of appellees endeavored to separate appellant from his wife, but alleges that she left her husband of her own free will while she was mentally competent; and denies that appellant is entitled to any of the relief prayed for.

The evidence discloses that appellant and Dora Zelmer Jones were married July 27, 1933, she then being seventy-two years of age. They lived together as husband and wife until December 16, 1934, when she left their home in Carlinville and failed to return. That evening appellant

located her at the home of her brother Edward C. Mieher, on a farm near Carlinville, and the latter informed him that Mrs. Jones was going to visit her family for a few days. On December 17, 1934, Mrs. Jones executed her deeds conveying the Carlinville property and the North Dakota property to Edward C. Mieher, which deeds were prepared in the office of an attorney named Peebles and acknowledged before him as notary public. It is not contended by the appellees, that any consideration was given for the deeds. The very next day, December 18, 1934, Edward C. Mieher signed a petition for the appointment of himself as conservator of the person and property of Dora Zelmer Jones. The petition was filed in the county court of Macoupin County December 20, 1934, and upon a hearing on January 2, 1935, Mrs. Jones was found to be incompetent, and the petitioner appointed conservator of her person and of her estate, in which capacity he served until his resignation on or about February 28, 1941, which resignation was made effective as of February 21, 1935.

On February 28, 1941, appellee John P. Denby was appointed successor conservator, effective as of February 21, 1935, and he continued so to act until the death of the ward on September 26, 1941. An inventory filed in the conservatorship June 19, 1939, scheduled both the Carlinville and North Dakota properties as real estate of the ward. Several accounts and reports filed by the conservators showed income from both pieces of real estate as being paid into the conservatorship estate.

The evidence further discloses that on March 11, 1936, there was prepared in the office of attorney Peebles, a complaint in the name of Denby as conservator against appellant, seeking the annulment of the marriage between appellant and Mrs. Jones. That complaint alleged, among other things, that at the time of the marriage Mrs. Jones was incapable of entering into a legal contract, for the reason that she was insane and did not realize the significance of

the marriage ceremony.. A further allegation was that "she yet remains in an insane condition." The record further discloses that on March 2, 1936, Mrs. Jones was adjudged insane and confined in the State hospital at Jacksonville, where she remained until the time of her death.

On November 22, 1940, Edward C. Mieher executed an "Affidavit of Trust," in which he stated that the Carlinville and North Dakota real estate was deeded to him in trust for the benefit of the brothers and sisters of Dora Zelmer Jones, including himself and Mathilda Walter, Millie Klaus, Albert Mieher, Fred Mieher, Elmer Mieher, Clara Talley and Flora Robley. Thereafter on April 10, 1941, he and his wife conveyed the property to the beneficiaries named, by quitclaim deeds which were recorded a few days later.

Appellant testified that subsequent to December 16, 1934, he was kept away from his wife both by threats of physical violence and by the refusal of her relatives to disclose her whereabouts, and that he only saw her on one or two occasions from that date until after she was committed to the State Hospital. He testified that he visited her there on several occasions, and was permitted to take her from the hospital on short walks, and that on one occasion he took her to a clinic for examination to see if she had recovered enough to be released.

There is conflicting testimony as to the mental condition of Dora Zelmer Jones and of her capacity to engage in normal business at and about the time of the execution of her two deeds to her brother. Appellant and witnesses in his behalf testified that for several months prior to December, 1934, Mrs. Jones would get lost and be unable to find her way home; that she failed to recognize people; that she constantly lost things in and about her home, some of which were later found hidden in strange hiding places; that she would throw things into the yard that one would normally not wish to dispose of, such as newly purchased

and unused groceries; that many times she would appear to have a vacant stare; that she was unable to do the family shopping and make everyday purchases without appellant accompanying her; and that during such period, although previously a good cook, she was unable to prepare meals for the family.

Appellees and witnesses in their behalf, both when called as adverse witnesses for appellant under section 60 of the Civil Practice Act and upon direct examination in their own behalf, testified that they had never observed Mrs. Jones do any of the unusual things referred to above; that she appeared to be sound, and that in their opinion she was able to conduct the everyday business affairs of life. Several witnesses testified that they were of the opinion that this was true for some time after a conservator had been appointed for her.

Other witnesses, both in behalf of appellant and in behalf of appellees, were either unable to remember her condition at that time, or admitted that they had not observed her frequently enough at that time to have an opinion.

Careful consideration of the foregoing facts, and of the entire record herein, causes us to conclude that the failure of the trial court to find that Edward C. Mieher occupied a fiduciary relationship toward Dora Zelmer Jones at the time she executed the two deeds conveying her property to him is contrary to the weight of the evidence. In *Staufenbiel* v. *Staufenbiel,* 388 Ill. 511, we said: "A fiduciary relation exists in all cases in which there is confidence reposed on one side and a resulting superiority and influence on the other. It is settled law that courts of equity will not set any bounds to the facts and circumstances out of which a fiduciary relationship may spring. The fiduciary relationship, with its legal incidents, includes not only all legal and technical relations such as guardian and ward, attorney and client, principal and agent and the like, but it extends to every possible case in which a fiduciary relationship exists

in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other. * * * The relationship need not be legal but it may be either moral, social, domestic, or merely personal." In the instant case Edward C. Mieher accepted or perhaps induced his sister to come into his household. He kept her husband from seeing her under the ruse that she was going to visit with him for a few days and then return to her home, and later ordered appellant off of his property under threat of physical violence. The deeds were executed while she was residing with him, and during the time that her husband was kept away from her by him.

We have held that mental condition is proper to be considered as strengthening the inference of undue influence which the law draws from an established fiduciary relation, and that where the donor is of a weak or enfeebled intellect, the presumption of undue influence will require stronger evidence to remove it; and that in such a case of mental weakness the donee has the burden of proving both the fairness of the transaction and the mental capacity of the grantor. (*Berry* v. *Egan,* 291 Ill. 377.) That the burden was properly met in the instant case by the appellees, whose title was derived from the donee, cannot be maintained. While it is true that several witnesses testified that Mrs. Jones was competent at the time that she executed the deeds, and for sometime thereafter, the acts of the donee indicate that in his mind the contrary was true. He failed to make the deeds a matter of public record for some six years after the date of their execution. The day after their execution, he executed a petition for the appointment of a conservator for her, and acted in that capacity himself when appointed by the county court of Macoupin County some three weeks later, which court found that she was incompetent.

Nor can it be inferred from the actions of the attorney, before whom the deeds were acknowledged, that he was

of the opinion that she was competent at the time of their execution. Although he was not called to testify as a witness, it was established that at the request of Edward C. Mieher he prepared the aforementioned petition for the appointment of a conservator for Mrs. Jones; that he continued to act as attorney for the conservator and his successor during the period of the conservatorship; that he caused to be prepared an inventory which listed the real estate in question as property belonging to the ward; and that he caused to be prepared accounts and reports in behalf of the conservator showing that income from the several pieces of real estate was paid to the conservator in behalf of the ward. It was also proved by the testimony of his partner that, at the request of someone whose identity was unknown to the witness, he caused to be prepared a complaint for the annulment of the marriage between appellant and Mrs. Jones, in which it was alleged that she was incapable of entering into the marriage contract by reason of insanity, and that she continued to remain in an insane condition at the time of the filing of the complaint in 1936, and that he signed the said complaint in behalf of Denby, the conservator.

For the reasons hereinabove set forth, we are of the opinion that Dora Zelmer Jones entrusted her care to her brother, Edward C. Mieher, and relied upon him, and her mental condition was such that it was incumbent upon him to act towards her with the highest degree of care and fair dealing. The existence of the fiduciary relationship having thus been established, the law presumes that any transaction between the parties by which the dominant party has profited is fraudulent. The presumption is not conclusive but may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. The burden rests upon the dominant party to produce such evidence and if the burden is not discharged the transaction will be set aside

in equity. (*Dombrow* v. *Dombrow*, 401 Ill. 324; *Clark* v. *Clark*, 398 Ill. 592.) The burden in this case rested on appellees and, in our opinion, has not been met. It is admitted that Mrs. Jones was given no consideration for her deeds, and from the evidence we do not find that she had the mental capacity to execute them. Under such circumstances, appellees may not prevail over the proved interest of appellant.

For the reasons stated, the decree of the circuit court of Macoupin County is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*