(No. 41515.—

CLARESA F. ARMSTRONG BROWN, Appellant, *vs.* COMMERCIAL NATIONAL BANK OF PEORIA *et al.,* Appellees.

*Opinion filed March 27, 1969.—Rehearing denied May 27, 1969.*

KING, ROBIN, GALE AND PILLINGER, of Chicago, and ROBERT L. BURHANS, of Peoria, (WILLARD L. KING, DOUGLAS PILLINGER, and J. WILLIAM BRAITHWAITE, of counsel,) for appellant.

KAVANAGH, SCULLY, SUDOW, WHITE & FREDERICK, of Peoria, (JOSEPH Z. SUDOW and LARRY M. LEIKEN, of counsel,) for appellee Commercial National Bank of Peoria.

DAVIS, MORGAN & WITHERELL, of Peoria, (ARLEIGH DAVIS and DONAN C. KIRLEY, of counsel,) for appellees Merritt Kempshall Meyer, Richard Kempshall Meyer, Jr., Emily Garland Meyer and certain unborn persons.

HARRY B. HOFFMAN, of Peoria, for appellees Richard Kempshall Meyer, Sr. and Mary F. Meyer.

Mr. Justice Klingbiel delivered the opinion of the court:

The Commercial National Bank of Peoria, as trustee, filed a complaint in the circuit court of Peoria County seeking approval of its accounts and investment policy with respect to two irrevocable trusts established in 1962 by Clara K. Meyer, since deceased. A counterclaim was filed by her daughter, Claresa Armstrong Brown, the principal beneficiary under one of the trusts. The counterclaim seeks to set aside both trusts together with a third one made in 1960, on the ground of undue influence on the part of the bank. After extensive hearings a decree was entered dismissing the counterclaim and approving the trustee's reports. The decree was affirmed by the appellate court (94 Ill. App. 2d 273), and we have allowed the daughter's petition for leave to appeal from the appellate court's judgment. The sole question is whether the circuit court erred in refusing to set aside the trusts.

The settlor, 85 years of age when the 1962 trusts were set up, had been divorced from her husband in 1933 and never remarried. She had two children: Richard, born in 1909, and Claresa, the appellant, born in 1916. Richard had four children, while Claresa had none. The 1960 trust was set up primarily for the settlor's grandchildren, and the two 1962 trusts were created for Richard and Claresa respectively. Under Richard's trust he was to receive the income for life, with the corpus to be distributed on his death to his descendants. Claresa's trust provided for one-half the income to be paid to her, and the remaining half to be paid her in the trustee's discretion, should she require it, with a power of appointment in her over any portions of the income accumulated. The corpus was payable after her death to her children if any and if none then to Richard's children. The trust also provided for a lump sum payment of $50,000 as Claresa should desire, and this sum in fact was paid to

her shortly thereafter when she purchased a co-operative apartment in Chicago, where she resided.

The evidence shows the settlor to have been a capable woman in the management of business affairs, having long experience in dealing with her stocks and other investments. She was an active director of the Central National Bank until its consolidation with the appellee bank in 1961. For many years her legal matters were handled by Attorney John Elliott, who was paid an annual retainer. In 1959 she discussed with Frank Mayne, vice-president of the bank, the question of making gifts in trust and she told him she wanted to create a trust for her grandchildren. Several conferences followed in which her attorney Elliott participated, and on January 7, 1960, the trust was executed by the settlor in the presence of both Elliott and Mayne.

In the summer of 1961 the settlor discussed with Mayne the matter of gifts in trust to her son and daughter, and several alternative plans were prepared by the bank. At that time she decided to employ Attorney Boyd Goldsworthy who had long known the son Richard and had done legal work for him through the years to draw the trusts. The documents were completed by November and sent to the settlor to study them. She gave them to both Claresa and Richard to examine and discuss, and on January 15, 1962, some six months after they were first discussed, the settlor signed them, in the presence of Mayne and Goldsworthy. The settlor died February 19, 1964, of arteriosclerosis. The appellant had received benefits from her trust for some two years after it was created but in April of 1963 began to question the bank's investment policy. Her demands for a change of investments became so insistent that on November 20, 1964, the bank filed its complaint herein to have its actions confirmed.

In support of her counterclaim to have the trusts set aside the appellant argues that a fiduciary relationship existed between the bank and the settlor, that the latter was

in a senile condition and did not understand the trusts, and that the bank "secured" the trusts through a presumed exercise of undue influence. It is asserted that the settlor did not have independent advice in private, and the proposition is advanced that in order to avoid a finding of undue influence under the present circumstances it must be shown that the donor privately consulted a competent, independent adviser.

We are aware of no rule of law which deems the transfer fraudulent whenever there has been no private consultation with an independent adviser. Whether the settlor had independent legal advice is merely one of several factors which may be important in determining the fairness of a transfer. The correct rule, where a fiduciary relationship exists, is that a transfer will be deemed presumptively fraudulent when the dominant party has profited at the expense of the dependent party. (*Boryca* v. *Parry*, 24 Ill.2d 320.) In such cases the fiduciary has the burden of proving the transaction was fair and did not proceed from undue influence. (*Turner* v. *Black*, 19 Ill.2d 296.) And as we have heretofore pointed out "Important factors in determining whether a particular transaction is fair include a showing by the fiduciary: (1) that he made a free and frank disclosure of all the relevant information he had; (2) that the consideration was adequate; and, (3) that the principal had competent and independent advice before completing that transaction." *Works* v. *McNeil*, 1 Ill.2d 47, 52.

In the case at bar it is undisputed that the only gain or benefit to be realized by the trustee is its fee for administering the trust, and the first question that arises is whether this kind of "benefit" is sufficient to give rise to the presumption. The law in this State is that under such circumstances there is no presumption. The mere fact that an attorney or confidential agent who writes the will is named executor and trustee, to be compensated as such, does not alone raise a legal presumption of undue influence. He must receive a substantial benefit as a legatee or beneficiary. (*Turner* v.

*Black,* 19 Ill.2d 296; *Gilbert* v. *Oneale,* 371 Ill. 427.) In *Compher* v. *Browning,* 219 Ill. 429, the confidential agent of an aged testatrix drew her will, or procured it to be drawn, and was made an executor and trustee thereunder. It was held (219 Ill. at 438—439) that the rule under which undue influence is inferred from a confidential relation has no application where the fiduciary takes nothing under the will, but was merely to be compensated for his services as such. He is not to be regarded as taking beneficially within the meaning of the rule but only as accepting duties thereunder. Where the fiduciary is benefited by the transaction he has the burden of showing its fairness, but if he merely drafts the instruments and is to act as trustee, the presumption does not apply. The party seeking to set aside the instruments must prove by a preponderance of the evidence that it was in fact the result of undue influence. *Williams* v. *Ragland,* 307 Ill. 386.

This the appellant has failed to do. Her claim that the trusts were "procured" by the bank out of self-interest finds no support whatever, nor are the repeated references to the settlor as a "senile donor" substantiated by the evidence. Her physical and mental condition described by some 28 witnesses, including her family physician, social friends, employees and fellow board members of the bank, and others was found adequate to enable her to understand the trusts, and such finding is amply sustained by the testimony. It is not necessary that a person setting up a trust be able to explain every technical term used in the instrument. *Pernod* v. *American Nat. Bank & Trust Co.* 8 Ill.2d 16, 21.

Other points which appellant seeks to make are also without merit. Despite counsel's urging to the contrary, there is little evidence from which it could be inferred that the attorney Goldsworthy represented anyone other than the settlor, who was billed for his services and paid the fee. And as the trial court expressly found, there is nothing to show that a conspiracy or plan existed on the part of the

son, Goldsworthy and Mayne to cause the dismissal of Elliott as Mrs. Meyer's attorney.

There is no need to unduly extend this opinion by discussing evidence item by item, as the parties have largely done throughout almost 400 pages of brief and argument. It is clear on this record that the basic idea for these trusts was initiated by the settlor, not by the trustee, and she established them only after deliberation and study over an extended period of time. Moreover there is nothing whatever to indicate she subsequently expressed dissatisfaction with any of them.

The trial court heard the evidence in this case, embodied in over 2000 pages of testimony and several hundred exhibits, and its conclusions were unanimously sustained by the appellate court. It is a well-established rule, too familiar to need citations, that where a case is heard by the chancellor and the evidence is oral, entirely or in part, his decree will not be reversed unless it is against the manifest weight of the evidence, or unless there is clear and palpable error in some other respect. The trial court having heard and observed the witnesses is in a better position than is a court of review to decide what weight should be given their respective testimony.

The Third District Appellate Court was correct in affirming the decree, and its judgment will be affirmed accordingly.

*Judgment affirmed.*