LEROY CRAWFORD, Adm'r of the Estate of Charles R. Hofer, Deceased, Plaintiff-Appellee, *v.* FLORENCE R. KREBS *et al.*, Defendants-Appellants.

Third District   No. 75-430

Opinion filed July 30, 1976.

Adolph Kohlhammer, of Rock Island, for appellants.

Katz, McAndrews, Durkee & Telleen, of Rock Island (Isador I. Katz, of counsel), for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Rock Island County finding that defendant Florence R. Krebs stood in a fiduciary relationship to the decedent Charles R. Hofer, in consequence of which the trial court directed that a conveyance of real property to the Hofer estate be made by defendant Florence Krebs and her daughter. The court also directed repayment or transfer to the Hofer estate various moneys and investments totaling over $50,000 which were transferred to the

defendants by decedent Hofer. In the judgment entered by the trial court, defendants were specifically ordered to reconvey the real estate and to account for the money and investments of the decedent Charles R. Hofer.

Defendants argue on appeal that the proof was not sufficient to show the fiduciary relationship and the consequent exercise of undue influence. Defendants also contend that the original plaintiff, Albert Crawford, had no authority to bring the action initially.

Decedent Charles R. Hofer was 76 years of age and a resident of Andalusia, Illinois, when, in May of 1974, he hired Florence Krebs to be his housekeeper. Mrs. Krebs, 51 years of age (who was previously unknown to Hofer), entered into an oral agreement with Hofer to move in with him and take care of him for $200 monthly plus room and board. Mrs. Krebs' daughter Crystal was also to live there.

Decedent Hofer broke his hip in a fall in late October 1974, and was in the hospital for a few weeks. In late November, after he had returned to his home, he deeded his home to the defendants Florence R. Krebs and her daughter Crystal Krebs, reserving only a life estate in himself. Thereafter, at different times, he endorsed $30,000 in funds from certificates of deposit over to the defendants, and transferred an investment certificate valued at $11,500 to them. He also gave Mrs. Krebs control of $10,600 from his savings, for use in paying daily living expenses. Apparently, from the record, the sums referred to together with the real estate conveyed, constituted virtually all that the decedent Charles R. Hofer owned.

Approximately on the first day of January, 1975, decedent Hofer was again admitted to the hospital for a few weeks. Thereafter, a month later, in February 1975, Albert Crawford was named conservator to collect for the estate of Charles Hofer, an incompetent. Albert Crawford immediately filed the instant action, seeking to recover, for the estate of Charles R. Hofer, the property and moneys given by Hofer to the defendants.

Shortly thereafter in late February or early March, 1975, Mrs. Krebs took Hofer to a house she had recently purchased in Viola, about 20 miles south of Andalusia, and she rented the Hofer home to another tenant. In April, however, Hofer was again taken to the hospital after a series of slight strokes, and from there he was taken to a convalescent home where he died, during the first week of June of 1975.

Hofer's wife had died in May 1973. Hofer's heirs consisted of one sister and a number of nieces and nephews. Most of these relatives lived in the Rock Island area and testified at the hearing on the petition in this case. The testimony generally indicated that Hofer got along well with his relatives and that most of the relatives visited him on a fairly regular basis. Hofer did not discuss his property or his financial affairs with them. The

relatives testified that the defendant Mrs. Krebs kept a very neat and clean house during her year with Hofer and that she did not interfere with their visits to the old man, although she would often be in the room during the visits. A friend of the decedent Hofer, Lossee Morford, and his son Steve, however, testified to a couple of instances in which Mrs. Krebs would not permit them to see Hofer. Witnesses for defendants, as well as other witnesses, including Dr. Meier, the family physician, stated that Charles Hofer was in good physical condition, other than his difficulty in walking, and that he was generally of sound and rational mind. However, after his October 1974 accident, the witnesses also testified, Hofer often seemed confused and absent-minded, and at times appeared to be depressed. Some witnesses stated that it became very difficult to talk with him. Dr. Meier testified that Hofer exhibited symptoms of becoming senile.

The only direct testimony concerning the transfer of the real estate and moneys to defendant Mrs. Krebs and her daughter, came from Mrs. Krebs herself, and from a few statements related by other witnesses. Mrs. Krebs said that Hofer first mentioned in June or July 1974 that he would like to give her all his property if she would stay with him and take care of him until he died. She stated that, shortly after his return from the hospital in November 1974, Hofer told defendant Mrs. Krebs that he wanted to convey his home to her and put her in his will. Mrs. Krebs also stated that Hofer did not want to discuss the matter with his usual attorney and instead picked the name of Peter Soble out of the listing of attorneys in the phone directory. Attorney Soble prepared a will and the deed to the real estate from Hofer to the defendant. According to the attorney's secretary they spent between 30 to 45 minutes with decedent Hofer. Soble answered the questions put to him by Hofer and explained the significance of the documents to Hofer and also made an effort to ascertain that the documents reflected Hofer's intent and wishes.

The only other testimony corroborating the voluntary nature of the transfers came from Dr. Meier, who said that Hofer told him during a visit in February, 1975, that he wanted to give Mrs. Krebs everything he had, and "nothing to the damned relatives." Dr. Meier testified that Hofer seemed alert and lucid when he made the statement, although the doctor thought it was a bit unusual, since Hofer had never seemed to dislike, in any way, any of his relatives.

Evidence in strong support of plaintiff's position was given in the testimony of a public health service nurse who testified that during a visit by her in February, 1975, to the home, Mrs. Krebs told her that she had "fooled" the family by having an attorney over and having Hofer sign over his property. There was also testimony by Ed Griffin, a nephew of Hofer, and a one-eighth beneficiary under a joint will executed in 1968 by Hofer and his wife, who testified that when he, Griffin, and Albert

Crawford visited Hofer in the hospital in April 1975, the old man told them that Mrs. Krebs had threatened to hit him if he didn't sign some papers and threatened to leave him if he sided with the Crawfords against her.

There was also evidence from Mrs. Krebs that during the first several months of her work for Hofer, she helped redecorate and repaint the house; helped make new curtains; did the washing, ironing and cooking; helped Hofer into and out of the bathtub every day and laid out his clothes. She also took him out walking or driving every day and occasionally took him to a restaurant or drivein theater. After the accident in October 1974, in addition to the duties otherwise performed by her, Mrs. Krebs stated she had considerable extra work because Hofer began to lose control of his bowels, developed an impacted bowel, and was mostly confined to bed.

It appears from the record that Mrs. Krebs was not paid for her services, despite the $200 a month agreement, and Mrs. Krebs testified that she also incurred a great deal of out-of-pocket expense in running the Hofer household.

The initial issue raised by defendant is the claim that Albert Crawford, the original plaintiff, did not show his standing to maintain the instant action. The complaint alleged at the outset of each of the two counts filed "that the plaintiff is the duly-appointed conservator to collect of the Estate of Charles R. Hofer, Incompetent, and a copy of Letters of said conservatorship is attached hereto and made a part hereof." Despite the recital, no copy of the letters of conservatorship was actually attached to the complaint.

Defendants filed a motion to dismiss alleging, in part, that Hofer had not been declared incompetent by any court and that Albert Crawford was not the conservator of Hofer's estate. The motion was denied by the court and defendants thereafter filed an answer to the complaint, in which defendants admitted the allegations of conservatorship which were set forth in the complaint. Prior to the final decree, Hofer died, but Albert Crawford was permitted to continue with the action against the defendants. Thereafter, Albert Crawford died and Leroy Crawford, who is now the administrator of the estate of Charles R. Hofer, deceased, has been substituted as plaintiff in this proceeding. While we see nothing in the record to show that Leroy Crawford was appointed as such administrator and as plaintiff in this action, the status of Leroy Crawford as administrator or substituted plaintiff is not challenged by defendants in their brief, and we, therefore, assume that Leroy Crawford was properly appointed as administrator and is properly a party in the action in the instant case.

■■ As we have also indicated, defendants admitted the capacity of

the respective parties to sue as conservator and, thereafter, as administrator. The right to maintain the action, by Albert Crawford as conservator, was not denied in the answer by defendants. We consequently conclude that the parties had standing to sue as plaintiffs. As a matter of information, apparently, a copy of the letters of conservatorship was actually appended to the brief in the case on appeal. We see no prejudice accruing to defendants by reason of the omission to attach such certification to the complaint in this case, in view of the procedure as we have outlined it and defendant's admission of the facts.

The major issue in the case is whether the evidence adequately established the exercise of undue influence on the part of Florence Krebs in obtaining the conveyance of the real estate, and the money referred to, from Charles Hofer.

■■ In this action plaintiff sought to set aside the transfer of real estate and moneys on the ground they were procured by fraud and undue influence, which is described as a species of constructive fraud. (*Kolze v. Fordtran* (1952), 412 Ill. 461, 470, 107 N.E.2d 686.) The burden of proof to make a showing of fraud or undue influence in order to set aside a deed or a gift is normally on the person attempting to make the transfer void. (*Klass v. Hallas* (1959), 16 Ill. 2d 161, 165, 157 N.E.2d 261; *Mills v. Ehler* (1950), 407 Ill. 602, 612, 95 N.E.2d 848; *Lord v. Reed* (1912), 254 Ill. 350, 357, 98 N.E. 553.) The nature of the undue influence to be proved must be "such influence * * * as to dominate and control the will of the testator or grantor and cause him to make a disposition of his property which he otherwise would not have made." *Lord v. Reed* (1912), 254 Ill. 350, 357.

As stated by the court in *Kolze v. Fordtran*, (1952), 412 Ill. 461, 470:

> "Influence, to render a conveyance inoperative, must be of such a nature as to deprive the grantor of his free agency. An undue influence means a wrongful influence, such an influence as makes the grantor or testator in the instrument executed speak the will of another and not his own." See also *Schueler v. Blomstrand*, 394 Ill. 600, 614-15, 69 N.E.2d 328 (1946).

Nevertheless, in situations where there exists a fiduciary or onfidential relationship between the grantor and the grantee, the law presumes that any transaction between them by which the grantee profits is potentially fraudulent and may be set aside where the grantee is the dominating party in the relationship. *Brown v. Commercial National Bank* (1969), 42 Ill. 2d 365, 369, 247 N.E.2d 894, *cert. denied*, 396 U.S. 961, 24 L. Ed. 2d 425, 90 S. Ct. 436 (1969); *Boryca v. Parry* (1962), 24 Ill. 2d 320, 327, 181 N.E.2d 124; *Jones v. Robley* (1949), 402 Ill. 302, 310, 83 N.E.2d 570; *Clark v. Clark* (1947), 398 Ill. 592, 601, 76 N.E.2d 446.

■■ In the latter instance, as illustrated in the cases, if a plaintiff can

prove the existence of a fiduciary or confidential relationship (which proof should be of a clear and convincing nature) (*Regnier v. Lay* (1961), 21 Ill. 2d 177, 179, 171 N.E.2d 629; *Stone v. Stone* (1950), 407 Ill. 66, 77, 94 N.E.2d 855), then the burden shifts to the defendant-grantee to show that the transaction was voluntary on the part of the grantor and without improper influence on his own part. *McFail v. Braden* (1960), 19 Ill. 2d 108, 117, 166 N.E.2d 216; *Davis v. Brickey* (1947), 397 Ill. 556, 564, 74 N.E.2d 710.

In *Kolze v. Fordtran* (1952), 412 Ill. 461, 468, the Illinois Supreme Court stated that a fiduciary relationship exists

"* * * where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. It exists where confidence is reposed on one side and resulting superiority and influence is found on the other. [Citations.] The relationship may exist as a matter of law between attorney and client, guardian and ward, principal and agent, and the like, or it may be moral, social, domestic, or even personal." See also *Herbolsheimer v. Herbolsheimer* (1975), 60 Ill. 2d 574, 577, 328 N.E.2d 529; *Davis v. Brickey* (1947), 397 Ill. 556, 564, 74 N.E.2d 710.

■■ While the mere assistance of an elderly or ailing person may not be enough to establish a fiduciary relationship, the result may be different where the assistance is of a 24-hour a day nature, over several months, where the patient is confined to bed (as Hofer was in this case after his October accident), and where, as here, there is evidence that the grantor's mental processes had begun failing. *Jones v. Robley* (1949), 402 Ill. 302, 309, 83 N.E.2d 570; *Davis v. Brickey* (1947), 397 Ill. 556, 565-66, 74 N.E.2d 710.

In a case which appears to be a direct precedent based on facts in the instant case, the Illinois Supreme Court found that a fiduciary relationship existed. (*Warren v. Pfeil* (1931), 346 Ill. 344, 361, 178 N.E. 894.) Although the evidence in the *Warren* case was clear that the grantor's mental condition was weak, we conclude that the factual basis recited in the *Warren* case was similar to that in the instant case. The trial court could properly have found that Florence Krebs was the dominant party in a confidential relationship with Charles Hofer. As heretofore noted, the proof of this relationship, even though it came largely from the direct testimony of the defendant herself, required a response or rebuttal from the defendant which would show affirmatively that the transactions between herself and Hofer were fair in all respects and without undue influence, fraud or coercion on her part.

■■ The trial court had to make a choice between Mrs. Krebs' own

testimony, suggesting the voluntary nature of the deed and gifts as well as the corroboration provided by Dr. Meier's testimony, and the testimony of the nurse who reported that Mrs. Krebs said that she had "fooled" Hofer's relatives, as well as that of Ed Griffin in his conversation with Hofer. In the situation such as we have in the instant case, the determination of the trial court rested heavily upon the evaluation of the credibility of the witnesses, as well as circumstantial evidence. As a court of review, we generally defer to the trial court, which had the opportunity to hear the testimony and view the witnesses. The trial court could have considered the fact that decedent Hofer gave virtually everything he owned to Mrs. Krebs, who, until six months before the transactions, was a stranger to him. The circumstance that he also chose not to use his usual attorney, but instead relied on an attorney assertedly picked out of the phone book, or perhaps furnished by others, could also have entered into consideration of the trial court. The trial court obviously concluded that the evidence as a whole showed the type of confidential relationship between Hofer and Mrs. Krebs that demanded proof from her of the fairness of the transactions, and the trial court could have logically concluded, from the evidence, that such proof was not established by defendants.

■■ Defendants also contend that there was absolutely no evidence that Crystal Krebs had any undue influence over decedent Hofer, and that she must thus be allowed to retain her share of the property and moneys. The court, however, properly found that if the transactions were procured by the improper influence of Crystal's mother, such transactions are invalid and, under the circumstances, the share of Crystal to the Hofer property could not be separated from her mother's actions as to transfers to Mrs. Krebs and Crystal. The trial court's judgment requiring that both defendants return and account for all of the property obtained from Hofer, could properly have been based on the evidence presented during the trial of this action. We cannot say, on review, that the trial court's determination was contrary to the manifest weight of the evidence.

We note from the record that Mrs. Krebs was apparently not paid the $200 a month, promised by Hofer, but introduced evidence that the value of her services during the year was in the area of $16,000. The trial court stated, in its opinion, that defendant Florence Krebs was entitled to $1800 for her services to Charles Hofer. While this may be in keeping with the oral agreement entered into by Hofer and Mrs. Krebs, it does not seem to answer all questions as to the rights of Mrs. Krebs and her daughter. From the evidence it appears that Mrs. Krebs made a number of purchases of day-to-day needs, and paid other expenses out of her own pocket, even though some or all of this money may have come from money which was obtained from Hofer. It is necessary that we state specifically, that, in

affirming this case, we do so without prejudice to the rights of the defendants to make claim for such moneys as may be due to defendants from the Hofer estate for services rendered. We cannot determine from the record that the $1800 would be the sole compensation to which Mrs. Krebs would be entitled and, accordingly, conclude that the cause should be remanded for a determination of the sum or sums to which Florence Krebs or her daughter are entitled by virtue of services rendered to the decedent Charles R. Hofer.

An issue was also raised and discussed in the case, by appellee, to the effect that a joint will made by decedent and his wife disposing of the entire estate of each, was a valid contract which could not be revoked, and that the second will executed by the survivor Charles Hofer, after the death of his spouse, was invalid. Since we are dealing solely with an inter vivos transaction and not with effect of wills which are not part of the record in this case, we have not discussed this issue and do not believe it is pertinent to the determination made in this case.

■■ For the reasons stated, the judgment of the Rock Island County Circuit Court is affirmed, insofar as it directs a reconveyance of the real estate to the estate of Charles Hofer and an accounting of the various moneys and investments also received from Charles Hofer by the defendants. This cause is, therefore, affirmed as indicated, but is remanded for further consideration and determination of the amount or amounts to which defendant Florence R. Krebs and her daughter Crystal K. Krebs may be entitled by virtue of services rendered to the decedent Charles R. Hofer.

Affirmed in part and remanded for further determination of certain claims for services rendered by defendants.

STOUDER and BARRY, JJ., concur.