EDITH MATTHEWS, Guardian of the Estate and Person of Inez Swaim Matthews, a Disabled Person, Plaintiff-Appellant, v. JAY DORN, Defendant-Appellee.

First District (5th Division) No. 1—89—1283

Opinion filed December 29, 1989.

Raymond I. Suekoff, of Arlington Heights (Stuart H. Wolf, of counsel), for appellant.

Harry A. Schroeder, of Flossmoor, for appellee.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiff, guardian Edith Matthews, brought this action to declare

a constructive trust for the benefit of Inez Swaim Matthews, a disabled person. At the close of plaintiff's case the court granted defendant Jay Dorn's motion for a directed finding. On appeal plaintiff claims that the court erred in failing to impose a constructive trust.

The first witness at trial was Cynthia Farenga, who was appointed guardian *ad litem* of the estate of Inez Matthews in January 1986. She first saw Inez at Northwestern Community Hospital in Arlington Heights, where Inez had been hospitalized for hip pain. At that time Inez knew her own and her late husband's names and her date of birth, but she could not recall anyone else's name. She remembered selling her home, but recalled none of the terms of sale except that she told Farenga that defendant "moved in and took over." At the conclusion of her interview Farenga determined that Inez needed a guardian.

Defendant was called as an adverse witness and testified that he was introduced to Inez by his father in 1979, and that he moved into Inez's home at 6250 Gaynelle Road in Tinley Park, Illinois, as a tenant. He offered to pay rent, but Inez refused and requested that he perform chores and household repairs for her instead. Inez had a slight limp at the time and used a cane. Defendant testified that Inez seemed "fine mentally" to him. She continued to drive her 1976 station wagon and did her own shopping, but he went to the store for her on a weekly basis. Defendant testified that by 1984 she was not driving as much and at some point stopped driving, that he then bought her automobile for $2,000 in cash, had the title transferred, and then did all the shopping.

Defendant further testified that Inez's sister-in-law Edith visited her approximately three times per year. Defendant and Inez discussed his purchase of her home in 1984. Inez told defendant that she had helped Edith previously and wanted defendant to have the house. After she mentioned it several times, defendant contacted attorney James Ebersohl in 1984. In the summer of 1985, because Inez had been insistent, he obtained a form contract and filled it out. He gave the contract to Ebersohl and went to the Tinley Park Bank to apply for a loan. After the bank advised him that Inez should be represented by counsel, he contacted attorney Richard Wojnarowski and asked him to call Inez. Wojnarowski came to the house and spent time with Inez before drafting an agreement between her and defendant. Wojnarowski came again with defendant's attorney on the day of closing. During this period Inez continued to experience pain in her hip and used a cane but not a walker.

On cross-examination defendant testified that he filled out checks

for Inez in 1984 and 1985 but she never signed them in blank. Defendant admitted that two checks for utilities and hardware were prepared by him and signed by Inez after title to the house had been transferred to him. Defendant could not explain a check dated January 1, 1986, nor did he know where the bank statements were for November and December 1985 and January 1986. Inez left the house in December 1985.

Edith Matthews testified that she had been appointed Inez's guardian following Inez's hospitalization. She first met defendant after he moved into Inez's home a year after her brother, Inez's husband, died. According to Edith, Inez had fallen at work before she had retired and suffered thereafter from hip pain. Inez had relied completely on Edith's brother while he lived, but Edith helped her obtain a driver's license after his death. During the next few years it became harder for Inez to get around, and she used a walker outdoors. Edith regularly telephoned Inez several times a week and visited her twice a month. Often Edith would come and stay or bring Inez back to Edith's home in Buffalo Grove for a visit. After defendant moved in, Inez relied mainly on defendant and stayed home and watched television. When Edith visited Inez, defendant was usually not present, but the house was neat.

Edith testified that Inez's mental condition deteriorated in 1985 and that Inez only recalled people who were close to her. In the spring of 1985 the house was put into a land trust to which Edith and defendant were beneficiaries in the event of Inez's death, but Inez had complete control over the house. In the autumn of 1985 Edith asked Inez if she knew she had "signed the house over." Edith also testified that she had to rewrite a check completely at that time because Inez could not do it.

Edith further testified that Inez's condition had continued to deteriorate during the last year and that Inez had been on public aid for two years. Edith testified that she did not believe that Inez had a will but did have one living brother.

On cross-examination Edith testified that she had a will drawn up for Inez naming Edith and defendant as beneficiaries, and that Inez signed it. On redirect examination Edith testified that Inez called defendant after her hospitalization and asked him to send her checkbook to her but defendant refused. Edith further testified that after she was appointed guardian of Inez's estate, defendant refused to give her any of Inez's check records.

James Ebersohl testified that he was contacted by defendant in June 1985 regarding a real estate closing in which Inez was going to

sell her home to defendant. Ebersohl recalled ordering a title policy and mortgage payoff letter. He also recalled recommending that attorney Richard Wojnarowski, with whom he shared office space, represent Inez in the transaction. Tinley Park Bank, which had agreed to extend a mortgage to defendant for the balance due, asked that Inez be represented. Ebersohl identified an agreement between Inez and defendant, which had been prepared by Wojnarowski. It provided that Inez was to live on the premises as long as she wanted without paying rent in exchange for selling the property to defendant. It further provided that defendant would not be liable for any of Inez's medical bills.

Ebersohl testified that he met Inez at her home on the day of closing because she was not planning to attend. He witnessed her signature on the power of attorney form. He testified that he also wanted to ascertain her condition for his own "peace of mind." Ebersohl recalled that Inez had a problem with her leg for which she used a walker. Inez indicated clearly to Ebersohl that she wanted defendant to have the property because defendant had been doing things for her for some time, that she relied on defendant greatly, and that no one else was available to take care of her. At this meeting Wojnarowski explained all the closing documents to Inez, who appeared to understand the ramifications of the transaction. Ebersohl also believed Inez's memory was good.

Richard Wojnarowski testified that Inez called him in October 1985 as a referral from Ebersohl. Inez explained that she wanted to sell her home to defendant for the amount left on the mortgage because defendant and she had resided together and he had cared for her for years. Inez told Wojnarowski that defendant had arranged to pay the loan and transfer title and that his bank insisted that she be represented. She also explained that she wanted him to draft an agreement which would allow her to continue living in the house in her own bedroom, but would provide that defendant would take care of the building and utilities. She did not want defendant to be responsible for her food or medical bills and stated that she did not walk well and preferred that Wojnarowski come to her home. Wojnarowski prepared such an agreement and also prepared a waiver requested by the bank stating that the sale of her home was voluntary and that she understood the terms of the contract and its ramifications. Wojnarowski testified that she appeared as if she were of sound mind when he spoke to her.

The contract that Wojnarowski drafted between Inez and defendant also contained a clause holding him harmless. He had advised Inez

against selling her home for only $6,000 because he believed it to be worth between $50,000 and $60,000. He saw defendant sign the contract in Ebersohl's office and met with Ebersohl, defendant, and Inez in her bedroom for her signature. She also signed the bank waiver, but she did not sign a letter of direction to the land trustee. On October 29, 1985, before the closing, he again came to Inez's home. While in her kitchen she signed the power of attorney which was witnessed by Ebersohl, the affidavit of title, bill of sale, and the closing statement. The only document Wojnarowski signed for her was the RESPA (Real Estate Statement Practices Act) form. The contract between Inez and defendant was not recorded. The price on the day of closing was $7,076.34; this amount was in excess of the contract price because all the closing costs were added to the amount required to pay off the mortgage.

On cross-examination Wojnarowski testified that he found Inez to be an alert, witty, and articulate woman. The first time he met her she was watching a ball game on television. They discussed baseball and exchanged other pleasantries before she stated her intention to give her home to defendant. Except for the small amount due on the mortgage she would have made a direct gift. Wojnarowski had no doubt that Inez understood all the closing documents. Wojnarowski further testified that Inez did not believe a written contract between her and defendant to be necessary, but he insisted that she be protected.

After the close of plaintiff's case defendant moved for a directed verdict. The trial court found that a fiduciary relationship existed between the parties, and that the disparity between the price and the fair market value of the residence created a presumption of violation of the fiduciary relationship. The trial court then found that the presumption was overcome by the evidence presented.

Plaintiff contends that the trial court erred when it failed to find that the gross inadequacy of consideration was sufficient to set aside the contract. Plaintiff claims that the cause should be remanded with directions that defendant reconvey the house to Inez and permit her to assume defendant's mortgage. In response defendant contends that the issue plaintiff presents is not before this court, and he addresses the more general issue of the trial court's decision to grant his motion for a directed finding.

We agree with defendant that inadequacy of consideration is not before this court. The trial court found that both a fiduciary relationship existed and that the inadequacy of consideration for purchase of the house gave rise to a presumption of a violation of that relation-

ship. The only question before this court is whether the record supports the trial court's finding that the presumption was rebutted. See *Boryca v. Parry* (1962), 24 Ill. 2d 320, 181 N.E.2d 124.

■■ In general the burden of proving that a transaction was not fraudulent between parties in a fiduciary relationship rests on the dominant party. (See *Boryca*, 24 Ill. 2d at 327, 181 N.E.2d at 127.) He must show that there was fairness in every particular. (See *Crawford v. Krebs* (1976), 40 Ill. App. 3d 568, 574, 352 N.E.2d 76, 81.) In the case before us two attorneys, defendant, and Edith all testified that Inez was not mentally incompetent generally at the time of the transaction in September 1985. Attorney Wojnarowski explained that she wanted to make the conveyance, that it would have been an outright gift to defendant except for the mortgage balance due, and that Inez understood what she was doing despite his advice against it. Thus there is nothing in the record to persuade us to alter the trial court's decision. Moreover we defer to the trial court's evaluation of the credibility of the witnesses because it had the opportunity to view them and hear their testimony. (See *Crawford*, 40 Ill. App. 3d at 575, 352 N.E.2d at 81.) Accordingly, we will not overturn the trial court's decision.

■ We note that attorney James Ebersohl, while representing defendant Jay Dorn, recommended to Inez Matthews that attorney Richard Wojnarowski, with whom he shared office space, represent her at the real estate closing. As stated above, Inez Matthews accepted the recommendation and retained Wojnarowski. Our concern is that this conduct could be construed by some as giving the appearance of impropriety, which could be considered to be a conflict of interest. However, since this issue was neither raised before the circuit court nor before us, it has been waived. (See *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 405, 442 N.E.2d 338, 342; see also 113 Ill. 2d Rules 341(e), (f).) Thus, our opinion does not represent an approval of this state of affairs.

Affirmed.

MURRAY, P.J., and LORENZ, J., concur.